Harry J. DIDUCK, individually and as a participant in the Local 95 Insurance Trust Fund and the Local 95 Pension Fund, and on behalf of all other persons who are, will be, or have at any time since January 1, 1980 been participants or beneficiaries in the Funds, similarly situated, Plaintiff,

v.

KASZYCKI & SONS CONTRACTORS, INC.; William Kaszycki; John Senyshyn; Trump–Equitable Fifth Avenue Company; Trump Organization, Inc.; Donald J. Trump d/b/a The Trump Organization; The Equitable Life Assurance Society of the United States and the Trustees of the House Wreckers Union Local 95 Insurance Trust Fund and of the House Wreckers Union Local 95 Pension Fund, Defendants.

No. 83 Civ. 6346 (CES).

United States District Court,
S.D. New York.

March 28, 1990.

Supplemental Order April 9, 1990.

Hall & Sloan by Wendy Sloan, New York City, for plaintiff.

Mait, Wang & Simmons by Robert Wange, New York City, for defendant Senyshyn.

Shea & Gould by Fran M. Jacobs, New York City, for defendants Trump, et al.

Lambert & Weiss by Kenneth L. Aron, New York City, for trustees.

## MEMORANDUM DECISION

STEWART, District Judge:

Plaintiff Harry J. Diduck brought this action to recover monies allegedly owed to certain union employee benefit funds of which Diduck is a beneficiary. Defendants Trump–Equitable Fifth Avenue Company, the Trump Organization, Inc., Donald J. Trump, Donald J. Trump d/b/a The Trump Organization, and the Equitable Life Assurance Society of the United States (the "Trump Defendants") move pursuant to Rule 56(b) of the Federal Rules of Civil Procedure for summary judgment dismissing plaintiff's causes of action against them. Defendant John Senyshyn moves pursuant to Fed.R.Civ.P. 56(b) for an order granting him partial summary judgment as to plaintiff's third and fourth causes of action. Plaintiff cross-moves for leave to file a second amended complaint pursuant to Fed.R.Civ.P. 15 and to have the action certified as a class action pursuant to Fed. R.Civ.P. 23.

### Factual Background

The factual background to this action has been recited by both this court in *Diduck v. Kaszycki*, No. 83 Civ. 6346 (S.D.N.Y. July 18, 1988) (the "July 18th Decision"), and the Second Circuit in *Diduck v. Kaszycki*, 874 F.2d 912 (2d Cir.1989). We will therefore only briefly summarize the relevant facts.

The Trump defendants hired William Kaszycki and his company Kaszycki and Sons Contractors, Inc. ("Kaszycki Corporation" and collectively the "Kaszycki defendants") to demolish the Bonwit Teller Building in midtown Manhattan pursuant to a written agreement signed January 30, 1980. To obtain workers for the demolition Kaszycki entered into a collective bargaining agreement on behalf of the Kaszycki Corporation with the House Wreckers Local 95 (the "Union") for the period from January 1, 1980 through June 30, 1981. The Trump defendants were not signatories to this agreement.

During the course of the demolition project the Kaszycki Corporation employed a number of non-union laborers from Po-land ("Polish workers") who were paid less than the Union workers. Under the terms of the collective bargaining agreement, Kaszycki Corporation was obligated to make contributions of specified amounts into the Union's pension and insurance funds (the "Funds"). These contributions were calculated from percentages of the total wages of both the Union and non-union workers. To facilitate this calculation the collective bargaining agreement provided that the Union's shop steward and the Kaszycki Corporation file weekly reports listing the workers on the job, the numbers of hours worked and their wages.

Defendant Senyshyn served as the Union's shop steward beginning in March 25, 1980 and filed three weekly reports. It is alleged that during his tenure as shop steward he submitted false shop steward reports in which he failed to document the use of the non-union Polish laborers. Indeed, throughout the demolition project neither the shop steward's nor the Kaszycki Corporation's weekly reports listed the Polish workers.

In June of 1980 the Union notified the Trump defendants that contributions to the Funds were in arrears because of the financial insolvency of the Kaszycki Corporation. In response to a threatened work stoppage by the Union, the Trump defendants made a number of payments to the Funds on behalf of the Kaszycki Corporation and advised Kaszycki by letter of his responsibilities for the Fund payments and his responsibilities under the demolition project agreement. However, neither Kaszycki nor the Trump defendants made any contributions to the Funds on behalf of the Polish workers.

On August 25, 1983, Diduck sued Kaszycki, the Kaszycki Corporation and Senyshyn to recover an estimated $600,000 owed to the Funds for the Polish workers. On June 24, 1984, Diduck filed a motion to amend his complaint, which we granted on August 9, 1984, and added the Trump defendants and the Trustees as nominal defendants. The amended complaint sought

relief derivatively and as a class action.[1]

In our July 18th Decision we granted Senyshyn's and the Trump defendants' motions for summary judgment and denied the plaintiff's motion for class certification. We held that Diduck lacked standing to sue derivatively because the trustees of the Funds had not breached a fiduciary duty, that Diduck could not maintain an action under RICO because no criminal enterprise existed and that the statute of limitations under ERISA barred his claims against Senyshyn. This decision was reversed and remanded by the Second Circuit which mandated that on remand the amended complaint's second, third, fourth, fifth, sixth and seventh claims remained for consideration on the merits by this court. *Diduck*, 874 F.2d at 920. The instant motions followed.

### Discussion

*Plaintiff's Renewed Motion for Class Certification*

In our July 18, 1988 Memorandum Decision we held that since any recovery from the action would go to the Funds, the instant action was a derivative suit. Accordingly, we denied plaintiff's motion for class certification. *Diduck v. Kaszycki & Sons Contractors, Inc.*, No. 83 Civ. 6346, slip op. at 4 (S.D.N.Y. July 18, 1988).

Plaintiff now argues that in light of our reversal by the Second Circuit the issue of class certification should now be reconsidered. Defendants argue that we are barred from reconsidering the issue on "law of the case" grounds.

 We begin by briefly summarizing "law of the case" principles. Under the "law of the case" doctrine when an appel-

late court has decided an issue, the trial court is under a duty at a later stage in the litigation to follow the appellate court's ruling on that issue. *United States v. Cirami*, 563 F.2d 26, 32 (2d Cir.1977). However, upon remand the trial court may consider matters not expressly or implicitly part of the decision of the higher court. *Id.* at 33. Further, in a circumstance

> in which the mandate of the appellate court does not address a particular issue, the appellate judgment, on this issue, does not establish law of the case.... It remains, however, that the issue was decided by the district court in an earlier case and was not disapproved by the appellate court. It is, therefore, the law of the case, but within the more flexible branch of the doctrine applicable to successive ruling of the trial courts.

1B J. Moore, W. Taggart & J. Wicker, Moore's Federal Practice ¶ 0.404[4–3] (2d ed. 1988).

 The "law of the case" applicable to successive rulings of the same court is a discretionary doctrine which "merely expresses the general practice of refusing to open what has been decided." *Lasky v. American Broadcasting Companies, Inc.*, 631 F.Supp. 962, 964 (S.D.N.Y.1986) (quoting *United States v. Birney*, 686 F.2d 102, 107 (2d Cir.1982)). Therefore, pursuant to the more "flexible branch" of the doctrine, a court may reconsider its own prior rulings when convinced that its previous ruling was substantially erroneous or when reconsideration is necessary to avoid injustice. *See Moll v. U.S. Life Title Insurance Co. of New York*, 700 F.Supp. 1284, 1286 (S.D.N.Y.1988). The jurisprudential concerns underlying the "law of the case" doctrine counsel against reconsideration of

---

1. The first amended complaint included seven claims. The first charged the Kaszycki Corporation with a violation of the Employees' Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1145, for its failure to contribute to the Funds. The second cause of action charged the Trump defendants with the same violation. The third charged the Kaszycki defendants, the Trump defendants and Senyshyn with fraud for making false statements and concealing facts in documents in violation of ERISA, 29 U.S.C. § 1031, and 18 U.S.C. § 1027. The fourth cause of action charged that the Kaszycki defendants, the Trump defendants, and Senyshyn had committed fraud actionable under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961(1)(B). The fifth sought recovery from the Trump defendants for unjust enrichment under state law. The sixth cause of action charged that Senyshyn breached his fiduciary duty under ERISA, 29 U.S.C. § 1104 and engaged in transactions prohibited by ERISA, 29 U.S.C. § 1106. The seventh cause of action alleged that Diduck had met the requirements to bring a derivative action under Fed.R.Civ.P. 23.1.

issues absent compelling circumstances such as an intervening change of law, the availability of new evidence, the need to correct a clear error, or to prevent manifest injustice. *See Wilder v. Bernstein*, 645 F.Supp. 1292, 1310 (S.D.N.Y.1986), *aff'd*, 848 F.2d 1338 (2d Cir.1988). We believe the law of the case doctrine applicable to successive rulings is the correct approach here since the Second Circuit did not and was not required to rule on the issue of class certification.

■ It is our view that our original denial of class certification was generally correct in the first instance. When it reversed this court's summary judgment determinations, the Second Circuit did not explicitly address our denial of class certification. Indeed, plaintiff did not specifically raise the issue as one that he wished to appeal.[2] However, in spite of the fact that the Second Circuit expressly recognized that the complaint originally sought relief derivatively and as a class action, *Diduck*, 874 F.2d at 916, the decision nevertheless is replete with references to the instant action as a derivative one. *See, e.g., Diduck*, 874 F.2d at 920. Indeed, in explicit reference to our holding denying class certification Judge Van Graafeiland's dissent ex-

pressly stated that he "and his colleagues" agreed with our holding that plaintiff was suing solely in a derivative capacity. *Diduck*, 874 F.2d at 923 (Van Graafeiland, J., dissenting). Thus, even if the Second Circuit was not required to reach the issue of our denial of class certification, we note that its decision implicitly approved of our holding.

Second, as we stated in our previous decision, "[o]ne of the few things that plaintiff, Trump defendants and the Funds agree on is that any recovery from this action will go to the Funds and not to the plaintiff." Accordingly, as we also stated in our earlier decision, "the suit clearly has been brought derivatively" on behalf of the Funds.[3] Moreover, "enforcement of contributions obligations is the function, at least in the first instance, of the trustees." *Struble v. N.J. Brewery Employees' Welfare Trust Fund*, 732 F.2d 325, 337 (3d Cir.1984) (construing section 502(g)(2)).[4] We are persuaded by the *Struble* court's analysis concluding that beneficiaries do not have a direct action for damages for unpaid contributions. *Id.* at 338.[5] This approach is consistent with the Second Circuit's determination that an individual ben-

**2.** According to plaintiff, he referred to our denial of class certification in a footnote to his appellate brief. The Trump defendants accurately contend that plaintiff did not articulate our denial of class certification as one of the issues he wished to appeal in his pre-argument statement to the Second Circuit. Indeed, plaintiff's notice of appeal states that he appeals our judgment of September 14, 1988 which only recites the grants of summary judgment to the Trump defendants, Senyshyn, and the Trustees, as well as the default judgment against the Kaszycki defendants.

**3.** Plaintiff's first amended complaint expressly states that the first three claims are brought derivatively.

**4.** Section 502(g)(2) of ERISA, 29 U.S.C. § 1132(g)(2) (hereinafter "section 502(g)(2)") reads in relevant part:
In any action under this subchapter by a fiduciary for or on behalf of a plan to enforce section 1145 of this title in which a judgment in favor of the plan is awarded, the court shall award the plan—
(A) the unpaid contributions,
(B) interest on the unpaid contributions,

(C) an amount equal to the greater of—
(i) interest on the unpaid contributions, or
(ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the court under subparagraph (A),
(D) reasonable attorney's fees and costs of the action, to be paid by the defendant, and
(E) such other legal or equitable relief as the court deems appropriate.
Section 515 of ERISA, 29 U.S.C. § 1145 reads in relevant part:
Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such a plan or such agreement.

**5.** The Third Circuit in *Struble*, expressly declined to decide whether beneficiaries have a right to injunctive relief for unpaid contributions. *Struble*, 732 F.2d at 338.

eficiary or participant has standing to bring a civil action under ERISA only to recover benefits due him or her, to enforce personal rights, or seek injunctive or equitable relief.[6] *See Alfarone v. Bernie Wolff Construction Corp.*, 788 F.2d 76, 79 (2d Cir.1986) (construing 29 U.S.C. §§ 1132(a)(1)(B) and 1132(a)(3)), *cert. denied*, 479 U.S. 915, 107 S.Ct. 316, 93 L.Ed.2d 289 (1986).[7] Therefore, plaintiff's instant ERISA damage claims for unpaid contributions may only be brought derivatively. *See Struble*, 732 F.2d at 337 (beneficiaries do not have a direct action for damages for unpaid contributions).

Consequently, since plaintiff seeks to vindicate rights accruing to the Funds, he has no individual standing to sue for unpaid contributions under ERISA. Thus, he also has no right to bring a class action. *See Akerman v. Oryx Communication, Inc.*, 609 F.Supp. 363, 376 (S.D.N.Y.) (predicate to plaintiff's right to represent a class is eligibility to sue in own right), *aff'd*, 810 F.2d 336 (2d Cir.1984). In sum, we affirm our previous holding that plaintiff's claim for unpaid contributions must be brought derivatively. We also affirm our previous holding denying class certification as to those claims brought derivatively.

*RICO*

■ We also agree with Judge Van Graafeiland that since any relief obtained will accrue solely to the Funds and that the primary right to seek redress for damages to the Funds belonged to the Trustees, plaintiff lacks individual standing to bring his RICO claim. *See Diduck*, 874 F.2d at 924 (Van Graafeiland, J., dissenting); *cf. Rand v. Anaconda–Ericsson, Inc.*, 794 F.2d 843, 849 (2d Cir.1986) (shareholders cannot bring RICO claim in their own names if legal injury was to corporation), *cert. denied*, 479 U.S. 987, 107 S.Ct. 579, 93 L.Ed.2d 582 (1986); *Warren v. Manufacturers National Bank of Detroit*, 759 F.2d 542, 544 (6th Cir.1985) (RICO action to redress injuries to corporation cannot be maintained by shareholder in own name but must be brought derivatively); *Sound Video Unlimited, Inc. v. Video Shack Inc.*, 700 F.Supp. 127, 136 (S.D.N.Y.1988) (shareholders cannot bring a RICO action in their individual capacity to redress injuries inflicted upon their corporation); *Nordberg v. Lord, Day & Lord*, 107 F.R.D. 692, 699 (S.D.N.Y.1985) (shareholder cannot bring a RICO action in own name to redress to corporation). Accordingly, we hold plaintiff's fourth cause of action, like his first three causes of action, is a derivative claim.

*Breach of Fiduciary Duties*

■ However, we depart from our previous determination regarding class certification in one respect. Plaintiff's sixth claim for relief for breach of fiduciary duties may be directly brought by a participant or beneficiary pursuant to section 502(a)(2).[8]

---

**6.** Although plaintiff prays for an Order "directing and enjoining" defendants to pay unpaid contributions, this relief is clearly in the context of the damage provisions of section 502(g)(2) relating to actions brought by fiduciaries.

**7.** Section 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B) ("section 502(a)(1)(B)") reads in relevant part:
A civil action may be brought—
(1) by a participant or beneficiary—
* * * * * *
(B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan.
Section 502(a)(3), 29 U.S.C. § 1132(a)(3) ("section 502(a)(3)") reads in relevant part:
A civil action may be brought—
* * * * * *
(3) by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which

violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan.

**8.** Section 502(a)(2) of ERISA, 29 U.S.C. § 1132(a)(2), reads in relevant part:
A civil action may be brought—
* * * * * *
(2) by the Secretary, or by a participant, beneficiary or fiduciary for appropriate relief under section 1109 of this title.
Section 409 of ERISA, 29 U.S.C. § 1109, reads in relevant part:
(a) Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any

Accordingly, plaintiff has individual standing to pursue his sixth claim for relief and may bring suit as a class representative if the requirements of Fed.R.Civ.P. 23 are met.[9]

We believe that the prerequisites for class certification have been met.[10] The proposed class is composed of all persons who are, will be, or have been, at any time since January 1, 1980, participants in and/or beneficiaries of the Funds. Joinder would be impracticable since according to the first amended complaint there are over 2000 class members.[11] Further, questions of law or fact are common to the class, and the claim presented is typical of the class. *See, e.g., Jennings Oil Company, Inc. v. Mobil Oil Corp.*, 80 F.R.D. 124, 128–29 (S.D.N.Y.1978) (typicality requirement satisfied if claims of representative and putative class arise from same transaction or legal theory or there is absence of antagonism between representative and class members). Finally, plaintiff's attorneys are competent and qualified to conduct the proposed litigation and the plaintiff has no interests in this litigation which are antagonistic to the class as a whole. As such, we find that plaintiff will adequately and fairly protect the interests of the class.

Moreover, since the action satisfies Rule 23(b)(1)(B) and is not maintained under Rule 23(b)(3), we agree with plaintiff that the notice and "opt-out" requirements of Rule 23(c)(2) are inapplicable.[12] Further, since any relief obtained will only accrue to the Funds, we believe that individual notice requirements to each class member are unnecessary. Accordingly, we grant class certification to plaintiff as to his sixth claim for relief.

*The "Demand Requirement"*

■ The Trump defendants move to dismiss the complaint and Senyshyn moves for summary judgment with respect to the third and fourth causes of action on the basis that plaintiff has failed to comply with the requirements of Rule 23.1 of the Federal Rules of Civil Procedure ("Rule 23.1").[13]

9. Fed.R.Civ.P. 23 reads in relevant part:

 (a) **Prerequisites to a Class Action.** One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

 (b) **Class Actions Maintainable.** An action may be maintained as a class action if the prerequisites if subdivision (a) are satisfied, and in addition:

 (1) the prosecution of separate actions by or against individual members of the class would create a risk of

 (A) inconsistent or varying adjudications with respect to individual members of the class ... or

 (B) adjudication with respect to individual members of the class which would as a practical matter be dispositive of the interests of other members not parties to the adjudications ... or

 (2) the party opposing the class has acted or refused to act on grounds generally applicable to the class ... or

 (3) the court finds that questions of law or fact common to members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods....

10. Defendants do not substantively address class certification in their opposition papers. Indeed, they do not contest the class action allegations of the first amended complaint.

11. We note that in plaintiff's original class certification motion the moving papers recited that there were over 1000 class members. January 11, 1985 Memorandum in Support of Plaintiff's Motion for Class Certification.

12. Fed.R.Civ.P. 23(c)(2) requires that in class actions maintained under Rule 23(b)(3) notice and opportunity to opt out of the class be given to all class members who can be reasonably identified. Rule 23(d)(2) leaves to the discretion of the court whether notice is required in other situations.

13. Rule 23.1 mandates that in a derivative cause of action a plaintiff allege "with particularity the efforts, if any, made by the plaintiff to obtain the action the plaintiff desires from the directors or comparable authority ... and the

The footnote continuing from the previous page reads:

profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary.

Plaintiff counters that the requirements of Rule 23.1 are inapplicable to ERISA. Plaintiff further contends that even if Rule 23.1 applies to derivative ERISA claims, the demand requirement is met if "in fact the trustees were aware of the moneys owed the fund and of the persons by whom the moneys are owed." Plaintiff's Memorandum of Law in Opposition to Defendants' Motions for Summary Judgment ("Pltf's Memo.") at 45.

As a threshold matter, we must determine whether the demand requirement of Rule 23.1 is applicable to plaintiff's derivative ERISA and RICO claims. Plaintiff argues that under *Katsaros v. Cody*, 744 F.2d 270, 280 (2d Cir.1984), *cert. denied*, 469 U.S. 1072, 105 S.Ct. 565, 83 L.Ed.2d 506 (1984), the Second Circuit has decided that no demand requirement is necessary as a precondition for a derivative suit brought under ERISA. We disagree.

In *Katsaros*, the appellant trustees argued that since there was no demand made upon them to seek recovery of certain expenses incurred in connection with an improper loan, the district court had erred in deciding that appellants had breached their fiduciary duties in failing to recover the expenses. The Second Circuit rejected appellants' argument. However, and most significantly, the panel concluded no demand requirement was necessary pursuant to section 502(a)(3) of ERISA, 29 U.S.C. § 1132(a)(3) (hereinafter "section 502(a)(3)"). This section allows for direct actions for equitable relief by beneficiaries and participants. *Katsaros*, 744 F.2d at 280. Thus, the lack of a demand requirement as enunciated in *Katsaros*, was not in the context of a derivative action but in the context of a direct action by pension plan participants for equitable relief pursuant to section 502(a)(3) and a breach of fiduciary duty claim.[14] Therefore, plaintiff's reliance on *Katsaros* is misplaced.

Indeed, the other case which plaintiff cites in support of his position that no demand is necessary for derivative actions under ERISA, *Thornton v. Evans*, 692 F.2d 1064, 1080 (7th Cir.1982), expressly stated that the Rule 23.1 demand requirement is applicable to the maintenance of a derivative action under ERISA. Accordingly, we hold that the traditional requirements of Rule 23.1 applicable to derivative actions in general are also applicable to derivative suits under ERISA. *Cf. Central States, Southeast & Southwest Areas Pension Fund v. Central Transport, Inc.*, 472 U.S. 559, 570 and n. 10, 105 S.Ct. 2833, 2840 and n. 10, 86 L.Ed.2d 447 (1985) (traditional trust law principles regarding the responsibilities of fiduciaries are applicable under ERISA).[15]

█ We further hold that the requirements of Rule 23.1 are applicable to derivative actions brought pursuant to RICO. *See Nordberg*, 107 F.R.D. at 700; *see also Small v. Goldman*, 637 F.Supp. 1030, 1031–32 (D.N.J.1986) (quoting *Nordberg*, 107 F.R.D. at 699–700). We are persuaded by Judge Edelstein's cogent analysis of RICO derivative actions in *Nordberg, supra*, and we concur with his conclusion that derivative action requirements "are not inconsistent with the policies underlying RICO and Section 1964 [18 U.S.C. § 1964(c) ]." *Nordberg*, 107 F.R.D. at 700 (citing *Allison v. General Motors Corp.*, 604 F.Supp. 1106, 1120 (D.Del.1985), *aff'd*, 782 F.2d 1026 (3d Cir.1985)).

█ The "demand rule" is intended to give the derivative corporation, and the directors of the corporation, the opportunity to take over a suit which has been brought on the corporation's behalf. *See Brody v. Chemical Bank*, 517 F.2d 932, 934 (2d Cir. 1975). A demand must be made upon those fiduciaries who are in office at the

reasons for the plaintiff's failure to obtain the action or for not making the effort."

14. Moreover, a breach of fiduciary duty cause of action pursuant to section 409 of ERISA, 29 U.S.C. § 1109 (hereinafter "section 409") may also be brought directly by participants and beneficiaries.

15. We note that the *Diduck* majority expressly and significantly stated that whether plaintiff made a pre-suit demand or whether one would have proved futile was best left to this court "to resolve on remand." *Diduck*, 874 F.2d at 918 n. 1.

time suit is brought. *Brody*, 517 F.2d at 934.

However, a demand is not required where such a demand would be "futile," and reasons for such a claim of futility must be pled with particularity. *See Lewis v. Graves*, 701 F.2d 245, 248 (2d Cir.1983). Whether a plaintiff's allegations of futility are sufficient to excuse demand depends upon the facts of each case and lies within the discretion of the district court. *Lewis*, 701 F.2d at 248. Demand is presumptively futile in circumstances in which directors are antagonistic, adversely interested, or involved in the transactions attacked. *Id.*

The first amended complaint, filed in June of 1984, recited that plaintiff had by letter in May of 1981, demanded of the Trustees as to whether and how much, if any, the Funds had lost by virtue of the employment of non-Union workers, and that plaintiff's attorneys in connection with another case have notified attorneys for the Funds of possible outstanding contributions due the Funds. Further, the first amended complaint alleges that other efforts to obtain collection of the outstanding contributions by the Trustees would be futile since as of December 1, 1980, the Trustees were notified of inquiries from the United States Department of Labor concerning possible delinquent contributions.

Plaintiff's papers in opposition to the summary judgment motions do not stress the specific allegations relating to plaintiff's alleged demands on the Trustees as recited in the first amended complaint. Instead, plaintiff primarily argues that the Trustees' failure to act despite their awareness of moneys owed the Funds and their failure to investigate the Trump defendants' possible liability excuses the demand requirement since a demand under the circumstances would have been futile.[16]

Pltf's Memo. at 46–47 (citing *Thornton*, 692 F.2d at 1080 (knowledge by trustees of defendants' actions giving rise to derivative suit but failure of trustees to name derivative defendants when trustees brought their own action excuses formal demand by plaintiffs)).

The Second Circuit found that the Trustees breached their fiduciary duty by "limiting their threatened work stoppages to collecting delinquent contributions for [only] Union workers and by failing even to investigate a possible lawsuit against the Trump defendants to recover the delinquent contributions for the non-union workers." *Diduck*, 874 F.2d at 917. Judge Sweet, writing for the panel, concluded that "the record contains no indication that the Trustees discussed at their meetings the possibility of suing Trump–Equitable or consulted a lawyer to determine Trump–Equitable's potential liability under federal or state law." *Id.*

In light of this finding by the Second Circuit, it is our view that plaintiff's reliance on *Thornton, supra*, is inapposite. An allegation that a demand would be "futile" implicitly assumes that the Trustees would reject a particular course of action if brought to their attention. However, if the Trustees did not even "consider the possibility" of pursuing legal action against the Trump defendants for delinquent contributions, it is difficult to understand how plaintiff could argue that a demand upon them to sue the Trump defendants for delinquent contributions would have been futile. Indeed, the fact that this alternative was not discussed by the Trustees is precisely why a demand in this instance was necessary—so that the Trustees would have been alerted to a possible course of action that they had apparently not considered.[17]

In *Thornton* the trustees instituted their own lawsuit and were aware of the *Thornton* derivative defendants' involvement

---

**16.** Defendants' assertion that the composition of the Trustees changed between the time of the alleged demands and the time of the first amended complaint setting forth the derivative action is unchallenged by plaintiff.

**17.** The Second Circuit stated that the Trustees' consideration of legal action against the Kaszycki defendants and their subsequent decision not to sue "represented prudent judgment." *Diduck*, 874 F.2d at 918.

with the actions which gave rise to the trustees' lawsuit. Yet, in spite of that knowledge, the *Thornton* trustees did not name the derivative defendants as defendants in their lawsuit. *Thornton*, 692 F.2d at 1080. It was in this context, where the *Thornton* trustees obviously considered and rejected a particular course of action sought by the derivative plaintiffs, that the Seventh Circuit held that a demand would have been futile.

Here, in contrast, the instant lawsuit brings derivative causes of action against the Trump defendants, a course of action which the Second Circuit expressly found to be an alternative the Trustees never discussed or considered.[18] Therefore, we reject plaintiff's contention that a demand upon the Trustees to pursue legal action to collect delinquent contributions would have been futile. Accordingly, and in the absence of any allegations of bias or self-interest on the part of the Trustees, we hold that the demand requirement of Rule 23.1 is not excused on these facts.

■ We next consider the adequacy of the demands made by plaintiff on the Trustees. We agree with defendants that the recitation of the demand attempts by the plaintiffs in the first amended pleading is insufficient. First, plaintiff does not dispute that the composition of the Trustees changed in the three years that elapsed between his tendering of a letter to the Trustees demanding information regarding possible delinquent contributions to the Funds and the filing of his derivative claims. Accordingly, this letter is insufficient to constitute an adequate demand. *Cf. Fischer v. CF & I Steel Corp.*, 599 F.Supp. 340, 347 (S.D.N.Y.1984) (newly constituted board should be given opportunity to take a "fresh look" at issues raised by plaintiffs and decide whether it wishes to pursue claims); *Brody*, 517 F.2d at 934

(purpose of demand rule not served by making demand on directors not in office when complaint was filed).

■ Second, mere notification of the Fund's attorneys of the possibility of delinquent contributions in the context of a completely separate suit does not, in our view, constitute an adequate demand on the Trustees nor does it serve the purposes of the demand requirement. *See Lewis*, 701 F.2d at 247 (citing Note, *The Demand and Standing Requirements in Stockholder Derivative Actions*, 44 U.Chi.L.Rev. 168, 171 n. 23 (1976) (forcing shareholders to exhaust intracorporate remedies by first making demand furthers principle basic to corporate organization that management of corporation be entrusted to its board of directors)).

For these reasons, we grant defendant Senyshyn's motion for summary judgment as to the third and fourth causes of action. We further grant the Trump defendants motion for summary judgment as to the second, third, fourth and seventh derivative causes of action.[19]

*Preemption*

■ Plaintiff's fifth cause of action seeks restitution to the Funds by the Trump defendants for their alleged unjust enrichment at the expense of the Funds. Defendants contend that since the common law causes of action are brought as an alternative to collect benefits protected by ERISA, they are preempted.[20] There can be no dispute that the common law causes of action are brought to collect benefits protected by ERISA. Therefore, we must determine whether ERISA preempts only state laws which relate to employee benefit plans, or whether ERISA also preempts state common law causes of action which relate to benefits under an employee plan. Our view is that both are preempted.

**18.** It is significant that plaintiff's derivative causes of action were first pleaded in the first amended complaint which also added the Trump defendants.

**19.** In light of our determination we need not reach defendants' other contentions in support of their summary judgment motions.

**20.** Section 514 of ERISA, 29 U.S.C. § 1144(a), states that "the provisions of this subchapter ... shall supercede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan...."

The Supreme Court in *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 98, 103 S.Ct. 2890, 2900, 77 L.Ed.2d 490 (1983) specifically stated that the scope of ERISA's preemption extended beyond state laws specifically designed to affect employee benefit plans and state laws dealing with subject matters covered by ERISA. Indeed, the Supreme Court has emphasized that ERISA establishes the regulation of employee benefit plans as an exclusively federal concern. *See Alessi v. Raybestos–Manhattan, Inc.*, 451 U.S. 504, 523, 101 S.Ct. 1895, 1906, 68 L.Ed.2d 402 (1981). This broad reading of the "relate to" language in ERISA supports a view that common law causes of action which concern ERISA protected benefits are preempted.

This view is reflected by the Second Circuit which has expressly approved of holdings by other courts which found ERISA could preempt state common law contract claims. *Gilbert v. Burlington Industries, Inc.*, 765 F.2d 320, 328 (2d Cir.1985) ("To hold otherwise would undermine the uniformity in plan administration that the Act was designed to promote."), *cert. denied*, 477 U.S. 901, 106 S.Ct. 3267, 91 L.Ed.2d 558 (1986); *accord Schwartz v. Newsweek, Inc.*, 653 F.Supp. 384, 388–89 (S.D.N.Y. 1986) (ERISA preempts plaintiffs' state law contract claims), *aff'd*, 827 F.2d 879 (2d Cir.1987). In addition, many other courts have held that state common law claims relating to employee benefit plans are preempted by ERISA. *See, e.g., Phillips v. Amoco Oil Co.*, 799 F.2d 1464, 1470 (11th Cir.1986) (request for damages under fraud claim is at its core an ERISA claim and preempted), *cert. denied*, 481 U.S. 1016, 107 S.Ct. 1893, 95 L.Ed.2d 500 (1987); *Authier v. Ginsberg*, 757 F.2d 796, 802 (6th Cir.1985) (Michigan common law cause of action for discharge in violation of public policy preempted by ERISA), *cert. denied*, 474 U.S. 888, 106 S.Ct. 208, 88 L.Ed.2d 177 (1985); *Blau v. Del Monte Corp.*, 748 F.2d 1348, 1356 (9th Cir.1984) (breach of contract, promissory estoppel, fraud claims preempted by ERISA), *cert. denied*, 474

U.S. 865, 106 S.Ct. 183, 88 L.Ed.2d 152 (1985); *Dependahl v. Falstaff Brewing Corp.*, 653 F.2d 1208, 1216 (8th Cir.1981), *cert. denied*, 454 U.S. 968, 102 S.Ct. 512, 70 L.Ed.2d 384 (1981) (state common law tortious interference with contract claim preempted by ERISA); *see also Phillips v. Amoco Oil Co.*, 614 F.Supp. 694, 708 (N.D. Ala.1985), *aff'd*, 799 F.2d 1464 (11th Cir. 1986) (listing cases which hold ERISA can preempt state common law causes of action); *District 65, UAW v. Harper & Row Publishers, Inc.*, 576 F.Supp. 1468, 1487 (S.D.N.Y.1983) (common law claims of unjust enrichment, conversion, fraud, and tortious interference with contract preempted by ERISA); *but cf. Sixty–Five Security Plan v. Blue Cross & Blue Shield*, 583 F.Supp. 380, 390–91 (S.D.N.Y.1984) (common law fraud claim based on same facts as ERISA claim permitted).

We are persuaded by both the relevant caselaw and the policies underlying the enactment of ERISA that ERISA preempts state common law causes of action which relate to employee benefit plans. In particular, it is our view that ERISA preempts those common law causes of action which are at the core ERISA claims. That being the case here, we dismiss plaintiff's fifth cause of action for unjust enrichment as preempted by ERISA.

*Motion to Amend Complaint*

Plaintiff moves to amend the first amended complaint to add to his sixth cause of action an allegation that the Trump defendants also participated in and are liable for Senyshyn's breach of fiduciary duty, and to add to his prayer for relief a claim for punitive damages. Defendants oppose the motion to amend on the grounds that punitive damages are unavailable under ERISA and that no claim for breach of fiduciary duty under ERISA may be asserted against non-fiduciaries.[21]

Since we have granted summary judgment in favor of defendants with respect to plaintiff's derivative claims, we need only

**21.** Having dismissed plaintiff's derivative second and third causes of action, we do not address whether punitive damages may be obtained pursuant to section 515, 29 U.S.C. § 1145, and common law fraud.

decide whether the Trump defendants, as non-fiduciaries, may be held liable for a breach of fiduciary duties and whether plaintiff may demand punitive damages.

The Second Circuit has stated that "parties who knowingly participate in fiduciary breaches may be liable under ERISA to the same extent as fiduciaries." *Lowen v. Tower Asset Management, Inc.*, 829 F.2d 1209, 1220 (2d Cir.1987) (citing *Thornton*, 692 F.2d at 1077–78). Defendants characterize *Lowen* as a case in which the court merely pierced the corporate veil of a fiduciary to impose liability on its principals. Reply Memorandum of the Trump Defendant in Support of Their Motion for Summary Judgment and in Opposition to Plaintiff's Motion for Leave to Amend ("Trump Reply Memo.") at 61. We disagree with defendants' interpretation.

■ *Lowen* partially based its approach to whether non-fiduciaries could be liable pursuant to section 409 on the reasoning in *Freund v. Marshall & Ilsley Bank*, 485 F.Supp. 629, 643 (W.D.Wis.1979). *Lowen*, 829 F.2d at 1220. In *Freund*, the court stated that since Congress intended to make traditional trust law applicable to ERISA, courts are "fully empowered to award the relief available in traditional trust law against non-fiduciaries who knowingly participate, either directly or through an agent, in a breach of trust." *Freund*, 485 F.Supp. at 641–42. Indeed, one of the cases cited by the Trump defendants for the proposition that section 409 does not authorize non-fiduciary liability for its breach, *Nieto v. Ecker*, 845 F.2d 868 (9th Cir.1988), expressly concedes that its holding is in opposition to the Second Circuit's approach as articulated in *Lowen. Nieto*, 845 F.2d at 871 ("Several courts have nevertheless held that section 409(a) imposes liability of non-fiduciaries insofar as they abetted fiduciaries in their breaches of duty (citing, *inter alia, Lowen* )"); *see also Brock v. Group Legal Administrators, Inc.*, 702 F.Supp. 475, 476 (S.D.N.Y.1989) ("*Lowen [v. Tower Asset Management, Inc.]* held that a non-fiduciary who knowingly participates in fiduciary breaches may be held liable under ERISA. . . . ");

*cf. Dardaganis v. Grace Capital Inc.*, 889 F.2d 1237, 1242 (2d Cir.1989) (*Lowen* deals with the liability of non-fiduciaries under section 409). Therefore, we agree with plaintiff that in this circuit as a matter of law, non-fiduciaries may be held liable under section 409 of ERISA.

■ Defendants also assert that even if non-fiduciaries may be liable pursuant to section 409 there is nothing in the proposed second amended complaint that indicates what the Trump defendants did in relation to Senyshyn's alleged breach of fiduciary duty. The Trump defendants claim that the complaint merely alleges that they helped Senyshyn submit false payroll reports. They conclude that since submission of payroll reports is not a fiduciary duty under ERISA, it cannot serve as a predicate for a claim that they participated in a breach of fiduciary duty. Trump Reply Memo. at 64. We find this argument disingenuous. The breach of fiduciary duty alleged is in essence Senyshyn's failure to accurately record information so that the Funds received less than the proper amount of contributions. The fiduciary duty contemplated by ERISA is to ensure that the Funds properly receive all that is due it, not merely to submit reports. Thus, it is our view that the Trump defendants' alleged participation in this breach is adequately recited in the proposed second amended complaint.

■ We turn next to whether punitive damages are available under ERISA. Defendants argue that the weight of authority in other circuits suggests that punitive damages are unavailable under ERISA. *See Giuntoli v. Garvin Guybutler Corp.*, 726 F.Supp. 494, 509 (S.D.N.Y.1989) (citing cases from the First, Fourth, Fifth, Sixth, Seventh, and Ninth Circuits holding punitive damages are unavailable pursuant to section 502(a)(3)). However, while the cases cited in *Giuntoli* are significant for reasons discussed *infra*, they construe only punitive damages sought pursuant to section 502(a)(3). Here, plaintiff's sixth cause of action, a breach of fiduciary duty in violation of section 409, is authorized pursuant to section 502(a)(2).

In *Massachusetts Mutual Life Insurance Co. v. Russell*, 473 U.S. 134, 105 S.Ct. 3085, 87 L.Ed.2d 96 (1985), the Supreme Court considered whether punitive damages were available to a beneficiary bringing a breach of fiduciary claim pursuant to sections 409 and 502(a)(2). The appeals court below held that punitive damages may be awarded to an individual beneficiary pursuant to the provisions of section 409(a). Justice Stevens, writing for the Court, reversed and held that since the text of section 409 indicated that Congress intended that section to authorize relief only for the plan itself, section 409 did not contain any authority to award extracontractual damages to an individual beneficiary. *Massachusetts Mutual Life*, 473 U.S. at 144, 105 S.Ct. at 3091. However, in a footnote the Court expressly stated that it did not reach the question whether section 409 authorized the recovery of punitive damages from a fiduciary by a *plan*. *Massachusetts Mutual Life*, 473 U.S. at 144 n. 12, 105 S.Ct. at 3091 n. 12 (emphasis original). It is this issue which we must now decide.

Various courts have considered what was left undecided in *Massachusetts Mutual Life* as to punitive damages under section 409(a) with divergent results. *See, e.g., Sommers Drug Stores Co. Employee Profit Sharing Trust v. Corrigan Enterprises, Inc.*, 793 F.2d 1456, 1463–64 (5th Cir.1986) (Congress did not intend to permit plans to recover punitive damages from fiduciaries who breach their duties under ERISA), *cert. denied*, 479 U.S. 1034, 107 S.Ct. 884, 93 L.Ed.2d 837 and *cert. denied*, 479 U.S. 1089, 107 S.Ct. 1298, 94 L.Ed.2d 154 (1987); *Leigh v. Engle*, 669 F.Supp. 1390, 1413 (N.D.Ill.1987), *aff'd*, 858 F.2d 361 (7th Cir.1988); *Utilicorp United Inc. v. Kemper Financial Services, Inc.*, No. 88–0129–CV–W–1 (W.D.Mo. April 11, 1989) (LEXIS, Genfed library, Courts file); *but see Schoenholtz v. Doniger*, 657 F.Supp. 899, 913–915 (S.D.N.Y.1987) (under ERISA

punitive damages are available to a plan for a fiduciary's breach); *James A. Dooley Associates Employees Plan v. Reynolds*, 654 F.Supp. 457, 461 (E.D.Mo.1987). The Second Circuit has not yet ruled on this issue.

Since there is no language in section 409(a) expressly permitting the award of punitive damages, the starting point for our analysis is the language of the statute which authorizes a court to award "other equitable or remedial relief as the court may deem appropriate" in cases where a person breaches a fiduciary duty to a plan. 29 U.S.C. § 1109(a). We must decide whether "other equitable or remedial relief" contemplates punitive damages. We conclude that it does not.

An approach to whether punitive damages are available under section 409(a) is in essence no different from an analysis of whether section 502(a)(3) provides for punitive damages since any authority for awarding such relief under section 502(a)(3) would be pursuant to language permitting the award of "other appropriate equitable relief." [22] 29 U.S.C. § 1132(a)(3).

In construing the term "equitable relief" in relation to section 502(a)(3), the six circuit courts which have addressed the issue agree that it does not encompass extracontractual or punitive damages. *See, e.g., Sokol v. Bernstein*, 803 F.2d 532, 538 (9th Cir.1986) (equitable relief as stated in section 502(a)(3) means only injunctive and declaratory relief); *see also Drinkwater v. Metropolitan Life Insurance Co.*, 846 F.2d 821, 825 (1st Cir.1988) (equitable relief in section 502(a)(3) is injunctive and declaratory relief), *cert. denied*, 488 U.S. 909, 109 S.Ct. 261, 102 L.Ed.2d 249 (1988). Moreover, we are persuaded by the Fifth Circuit's reasoning in *Sommers, supra*, that "equitable" relief under either section 502(a)(3) or section 409(a) does not contemplate punitive damages. First, we are convinced that Congress intended to import

---

**22.** *Massachusetts Mutual Life* also left this issue expressly undecided as well. 473 U.S. at 139 n. 5, 105 S.Ct. at 3088 n. 5 ("Because respondent relies entirely on § 409(a) [29 U.S.C. § 1109(a)], and expressly disclaims reliance on

§ 502(a)(3) [29 U.S.C. § 1132(a)(3)], we have no occasion to consider whether any other provision of ERISA authorizes recovery of extracontractual damages.").

into ERISA the fiduciary principles of the law of trusts. *See Sommers,* 793 F.2d at 1463. Second, under the law of trusts trustees are generally not liable for punitive damages for breaches of fiduciary duty. *Id.* at 1463–64; *see also Powell v. Chesapeake & Potomac Telephone Co. of Virginia,* 780 F.2d 419, 424 (4th Cir.1985), *cert. denied,* 476 U.S. 1170, 106 S.Ct. 2892, 90 L.Ed.2d 980 (1986); *In re Emhart Corporation,* 706 F.Supp. 153, 157 (D.Conn. 1988).

Finally, within ERISA's legislative history in connection with remedies for breaches of fiduciary duties, the kinds of equitable relief contemplated are the traditional forms of equitable relief such as injunctions, constructive trusts, and removal of fiduciaries. *See* S.Rep. No. 383, 93d Cong., 2d Sess., *reprinted in* 1974 U.S.Code Cong. & Admin.News 4639, 4890, 4989.[23] Therefore, we hold that section 409(a) does not authorize the recovery of punitive damages from a fiduciary by a plan.

Rule 15(a) of the Federal Rules of Civil Procedure states that leave to amend "shall be freely given when justice so requires it." The Supreme Court has stated [i]n the absence of any apparent or declared reason—such as undue delay, bad faith, or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of the allowance of the amendment, futility of amendment, etc. —the leave to amend sought should, as the rules require, be "freely given."

*Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962).

██ Prejudice to the opposing party is ordinarily the most compelling reason for denying a motion to amend under Rule 15(a). *See* 6 C. Wright & A. Miller, Federal Practice and Procedure § 1487; *cf. Barrows v. Forest Laboratories, Inc.,* 742 F.2d 54, 58 (2d Cir.1984) (undue delay, bad faith, prejudice to opposing party are the "touchstones" of court's discretion to deny leave to amend). Prejudice has been found when a proposed amendment contained an unexpected allegation or defense. *See Evans v. Syracuse City School District,* 704 F.2d 44, 47 (2d Cir.1983). Prejudice may also occur when the proposed amended pleading is interposed after the completion of dis-

---

**23.** We find Judge Cooper's argument to permit plans to claim punitive damages under section 409(a) in *Schoenholtz, supra,* to be powerful but unpersuasive. First, *Schoenholtz* bases its holding in part on an assumption that Congress intended to provide "the full range of legal and equitable remedies available in both state and federal courts." *Schoenholtz,* 657 F.Supp. at 914 (quoting legislative history quoted in *Donovan v. Bierwirth,* 754 F.2d 1049, 1052 (2d Cir.1985)). Second, *Schoenholtz* found that traditional principles of trust law allowed recovery of punitive damages in cases of extreme fiduciary disloyalty such as malice or fraud. *Id.* Third, *Schoenholtz* based in part its conclusion that since punitive damages were available under the Landrum–Griffin Act, in light of the similarities between it and ERISA, punitive damages should be also available under ERISA.

However, the Fifth Circuit observed that when the Supreme Court reversed the Ninth Circuit's holding that punitive damages for actual malice or wanton indifference were available to individuals under section 409, it did so by expressly stating that the Ninth Circuit's reliance on legislative history indicating Congress intended to provide the "full range of legal and equitable remedies" was misplaced. *See Sommers,* 793 F.2d at 1464 (citing *Massachusetts*

*Mutual Life,* 473 U.S. at 146, 105 S.Ct. at 3092). The Supreme Court stated in *Massachusetts Mutual Life* that while early bills provided for both legal and equitable relief, in the bill finally adopted the reference to "legal relief" was deleted. *Massachusetts Mutual Life,* 473 U.S. at 146, 105 S.Ct. at 3092.

In addition, while *Schoenholtz* correctly states that in various states there have been awards of punitive damages for breaches of fiduciary duty where malice or fraud has been involved, it is still the traditional and majority rule that such relief is generally unavailable in an action by a beneficiary against a trustee for breach of trust. *See Powell,* 780 F.2d at 424 (citing Restatement (Second) of Trusts § 205 (1959)); *see also Sommers,* 793 F.2d at 1464.

Finally, we are unpersuaded by the analogy to the Landrum–Griffin Act. As *Schoenholtz* itself acknowledges, other employee protection statutes lacking specific remedial provisions such as the Railway Labor Act have been construed to preclude punitive damages. *Schoenholtz,* 657 F.Supp. at 915. Further, the relevant statutory language in the Landrum–Griffin Act broadly speaks of "relief as may be appropriate" to be awarded, and does not confine itself to "equitable or remedial relief" as does section 409(a). Accordingly, we are must disagree with Judge Cooper's analysis.

covery, or is based upon a new set of operative facts. *See Ansam Associates Inc. v. Cola Petroleum, Ltd.*, 760 F.2d 442, 446 (2d Cir.1985).

Defendants do not claim that the proposed amendments cause them any undue prejudice contending only that the proposed amendments are not legally cognizable. We also find no prejudice. Moreover, we see no evidence of bad faith or dilatory motives.

Therefore, we grant plaintiff's motion to amend the complaint to add the Trump defendants to his sixth cause of action and deny plaintiff's motion to amend the complaint to add a prayer for punitive damages.

## Conclusion

For the reasons articulated, we have decided the following:

1. Plaintiff Harry J. Diduck's motion for leave to amend the first amended complaint to add the Trump defendants to the sixth cause of action is granted;

2. Plaintiff's motion for leave to amend the first amended complaint to add a prayer for punitive damages is denied;

3. Plaintiff's motion for class certification is granted as to the sixth cause of action and denied as to the second, third, fourth, and fifth causes of action;

4. Defendant John Senyshyn's motion for partial summary judgment as to the third and fourth causes of action is granted;

5. The motion for summary judgment to dismiss the complaint of defendants Trump–Equitable Fifth Avenue Company, the Trump Organization, Inc., Donald Trump d/b/a The Trump Organization, and the Equitable Life Assurance Society of the United States is granted as to the second, third, fourth, fifth and seventh causes of action and denied as to the sixth cause of action.

SO ORDERED.

## SUPPLEMENTAL ORDER

In our Memorandum Decision of March 28, 1990 we, *inter alia*, dismissed plaintiff's third and fourth derivative causes of action against defendant John Senyshyn and plaintiff's second, third, fourth, and seventh derivative causes of action against defendants Trump–Equitable Fifth Avenue Company, the Trump Organization, Inc., Donald Trump d/b/a The Trump Organization, and the Equitable Life Assurance Society of the United States ("Trump Defendants") for failure to comply with the requirements of Fed.R.Civ.P. 23.1 ("Rule 23.1"). Defendant Senyshyn now requests that since plaintiff's seventh cause of action alleged only that plaintiff had met the derivative requirements under Rule 23.1, we also dismiss the seventh cause of action against him. We agree and dismiss plaintiff's seventh derivative cause of action against Senyshyn.

Senyshyn, joined by nominal defendants Trustees ("Trustees") of the House Wreckers Union Local 95 Insurance Trust Fund and of the House Wreckers Union Local 95 Pension Fund ("Funds"), also requests that since all derivative claims have been dismissed, the Trustees be dismissed as nominal defendants. Plaintiff opposes the request on the grounds that if plaintiff should prevail in this action, the court should be in a position to exercise "equitable control" over the Trustees.

We are of the view that since all the derivative claims have been dismissed and since, should plaintiff prevail, all monies would go to the Funds irrespective of whether the court exercises "equitable control" over the Trustees, there is no reason to have the Trustees remain as nominal defendants. Accordingly, we dismiss the Trustees from the action.

SO ORDERED.