**In re WATERMAN STEAMSHIP CORP., Debtor.**

**WATERMAN STEAMSHIP CORP., Plaintiff,**

**v.**

**Jose AGUIAR, et al., Defendants.**

Bankruptcy No. 83 B 11732 (FGC).

Adv. No. 87–5042A.

United States Bankruptcy Court, S.D. New York.

Oct. 1, 1996.

A.L. Gropper, E.F. Hyman, White and Case, New York City, for Plaintiff/Debtor Waterman Steamship Corporation.

L.C. Jacques, A. Kellman, Maritime Asbestosis Legal Clinic, a Division of Jacques Admiralty Law Firm, Detroit, Michigan (MALC), for Defendant Asbestos Claimants.

FRANCIS G. CONRAD, Bankruptcy Judge.

Waterman brought this adversary proceeding[1] seeking injunctive and declaratory relief against asbestos-related claims filed by seamen formerly employed by it on one or more voyages of its merchant ships. Waterman contends that the claims were discharged in its 1983 bankruptcy or, alternatively, that MALC's failure to produce evidence within its control warrants a finding that Claimants manifested an asbestos-related disease prior to the Date of Confirmation of the Waterman

---

1. Our subject matter jurisdiction over this adversary proceeding arises under 28 U.S.C. § 1334(b) and the "Standing Order of Referral of Cases to Bankruptcy Judges" of the United States District Court for the Southern District of New York, dated July 10, 1984 (Ward, Acting C.J.). This is a core matter under 28 U.S.C. Section s 157(b)(2)(B) & (O). This Memorandum of Decision constitutes findings of fact and conclusions of law under Fed.R.Civ.P. 52, as made applicable to this adversary proceeding by Fed.R.Bkrtcy.P. 7052.

Plan of Reorganization, and their claims are thus barred.

## INTRODUCTION

When Waterman sailed out of the protected harbor of bankruptcy after confirmation of its Chapter 11 plan in 1986, it encountered the high winds and stormy seas of mass carcinogenic torts. The roiling waters were stirred up by its former employees, the seamen it tried to protect from that age-old nemesis of shipowners and sailors alike, fire at sea, by installing asbestos barriers to heat and flames. Waterman is still at sea, rocked, like many others, by the explosion of asbestos-related litigation. Like most asbestos litigation, this proceeding is a classic example of the civil case that costs too much and takes too long to resolve as each side imposes heavy transaction costs on the other. Legal procedure is used tenaciously and manipulatively by asbestos Claimants' counsel on the one hand, who fear that collective action will dilute their clients' individual claims and result in underpayment, and yet, on the other hand, want to settle *en masse*, without engaging in full disclosure as to each of the claims. Asbestos defendants resist each individual case intractably, contending that each case is fact specific in determining the degree of harm and contribution, if any, by a Claimant's own lifestyle and behavior, *vis a vis* smoking, alcohol, other exposure to toxic carcinogenic substances, and, in the case of seamen, asbestos exposure from work on other companies' vessels. Finally, there is the long wait for an asbestos-related disease to appear in all its physical manifestations. As our Second Circuit said in *Kane v. Johns–Manville Corp.*:

> A significant characteristic of these asbestos related diseases is their unusually long latency period. An individual might not become ill from an asbestos-related disease until as long as forty years [2] after an initial exposure.

**2.** The latency period between exposure and manifestation of asbestosis is more than 20 years and is usually 25–40 years. The disease can progress after exposure has ceased.

**3.** See, Sison, R.F., Hruban R.H., Moore, G.W., Kuhirman, J.E., Wheeler, P.S., Hutchins, G.M.,

*Kane v. Johns–Manville Corp.*, 843 F.2d 636, 639 (2d Cir.1988).

Asbestos is a naturally occurring hydrated silicate that forms fibers rather than dust when it is crushed. Virtually indestructible, it is not biodegradable, and resists fire, heat, and acid. Once hailed as a "miracle" mineral, we have seen it used in the gloves that firefighters wear when raising and lowering blocks that put out chimney fires, and as fireproof shingles on houses.

When incorporated into a product, asbestos fibers are bound chemically tight. The fibers are released into the air when a product that contains them is disrupted, cut, crushed or made friable. Employees working in the area breathe in the air-borne particles, which are then absorbed into the tissues of the lung.

Sadly, asbestos exposure is associated with a number of serious and often fatal medical problems involving pulmonary function. These problems include various changes in the pleural area of the lungs—pleural plaques, pleural thickening, and pleural effusion. Effusion, often benign, can occur within a few years after exposure. Like a bad chest cold associated with fever or flu, the symptoms can include chest pain, fever, and swelling of lymph nodes or glands. A good medical history is important to rule out other causes for the chest pain, such as fever and lymphocytosis.

These pleural changes, except for benign pleural effusion, rarely develop before 20 years after intensive occupational exposure to asbestos.[3] Pleural plaques serve as a marker for asbestos exposure but no relationship seems to exist between plaques and the later development of asbestosis or malignancy, including mesothelioma.[4] Pleural plaques do not usually impair lung function, while pleural thickening, if extensive, can be associated with significant lung impairment.

*Pulmonary Disease Associated with Pleural 'Asbestos' Plaques*, Chest 1989, 95:831–5.

**4.** See, Weill, H., *Asbestosis–Associated Diseases: Science, Public Policy, and Litigation*, Chest 1983; 84:601–8.

The term "asbestosis" is reserved for the parenchymal pneumoconiosis related to asbestos exposure. Criteria for the diagnosis of asbestosis includes:

i. Reliable history of asbestos exposure

ii. Appropriate interval between exposure and disease detection

iii. Abnormal chest x-ray showing fibrosis

iv. Forced vital capacity below normal

v. Diffusing capacity below normal

vi. Bilateral inspiratory crackles at the posterior lung bases.[5]

The latency period between exposure and the manifestation of asbestosis is more than 20 years and is usually 25–40 years. The development of asbestosis is strongly dose related. Put in layperson's terms, individuals with asbestosis typically present themselves to a physician with shortness of breath, usually upon exertion, a nonproductive cough, and chest pain. X-rays must be taken for a diagnosis. Smoking makes asbestosis worse. Lung biopsies are used only to rule out other causes.

Although mesothelioma is associated with asbestos exposure, it can occur in the absence of any known asbestos exposure. Unlike asbestosis, smoking is not considered a risk factor for this fatal disease.

### Procedural History

This adversary proceeding is again before us on the remand for factual findings from Judge Stanton, *In re Waterman Steamship Corp. (Waterman Steamship Corp. v. Aguiar)*, 157 B.R. 220 (S.D.N.Y.1993), of our holding at 141 B.R. 552. We repeat only that part of the history of the adversary that is necessary for an understanding of our ruling today.

Waterman filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code on December 1, 1983. This court issued a Bar Order on May 4, 1984, under Rule 3003(c)(3) of the Federal Rules of Bankruptcy Procedure, requiring all entities with a claim against Waterman to file a proof of claim by July 20, 1984, or be forever barred from pressing that claim against Waterman.

The Bar Order required Waterman to give individual notice to all entities known to have an admitted or potential claim against the Debtor, and to give notice to all others by publication of the bar date on or before June 1, 1984. Publication was made.

The Plan of Reorganization, confirmed June 19, 1986, expressly discharged all then-existing claims, no matter when they arose, and enjoined any person holding such a claim from seeking to enforce it. A final decree was signed on January 9, 1991.

After the plan was confirmed in 1986 and thereafter, asbestosis Claimants named Waterman as a defendant in suits alleging exposure to asbestos, negligence, breach of warranty to provide seaworthy vessels, and willful violation of the duty to maintain safe and seaworthy vessels. Waterman never answered any of these complaints, but instead filed this adversary proceeding seeking a declaratory judgment. Ruling originally in response to the parties' summary judgment motions, we found the original bar claims notice to be inadequate, and ruled in favor of Claimants. Judge Stanton remanded and directed that we make factual determinations concerning such questions as when the seamen manifested disease symptoms, and the reasonableness of the notice to particular individuals or groups.

### ISSUES

After remand, an intensive discovery schedule was set, the matter was readied for trial, and briefs were filed. After the trial waters calmed, the following issues washed upon the shore:

● Are claims barred if the injury manifested itself before the bar claims date, or before the plan confirmation date?

● Who has the burden of proof in this adversary proceeding?

● May we add unnamed Claimants as parties to this action?

● Are claims for post-bar date wrongful deaths deemed to be pre-bar date claims

---

**5.** Derived from Murphy, *et al., The Diagnosis of Nonmalignant Diseases Related to Asbestos,* Am

Rev Respir Dis 1986; 134:363–8.

when the underlying injury manifested before the bar date?

● Did an order from the Northern District of Ohio dismissing various defendants' claims have *res judicata* or collateral estoppel effect here?

● Did MALC ignore our orders and directions to comply with Waterman's discovery requests?

### Are Claims Barred if the Injury Manifested Itself Before the Bar Claims Date, or Before the Plan Confirmation Date?

The side of this issue taken by each party is easy to understand. Because of the long latency period for asbestos-related diseases, an earlier bar date theoretically allows more claims to escape discharge under the Plan of Reorganization. Thus, MALC wants us to apply the original July 20, 1984, claims bar date, because more claims would survive, and Waterman wants the later confirmation date to apply because fewer would. Judge Stanton's opinion states that the claims of persons who manifested injury before the bar date would be discharged. *Id.*, 157 B.R. at 222. MALC argues that on remand we must adhere to the resolution of an issue, even where the prior decision is clearly erroneous. *See Soto–Lopez v. New York City Civil Service Commission,* 840 F.2d 162, 167 (2d Cir.1988). Waterman counters that we are free to consider matters that were not expressly or implicitly part of the Appellate Court's decision. *See, e.g., Diduck v. Kaszycki & Sons Contractors,* 737 F.Supp. 792, 796 (S.D.N.Y.1990). Waterman correctly argues that the issue of whether the bar date or the confirmation date is the operative date for claims in the bankruptcy case was never argued or briefed before the District Court. Thus, we are not bound by the law of the case, as MALC argues, but are free to the decide the issue. We hold that the bar claims date of July 20, 1984 is the operative date.

The reason for our holding is quite simple. A claims bar date is much more than a means to limit claims. It also brings finality to claimants and debtors alike. Although it is true that Section 1141 provides that confirmation of a plan discharges all claims that arose before the confirmation, coextensive with the section is the right to obtain a bar claims order that sets a bar claims date that is earlier than the confirmation date. If we were to hold that the confirmation date here was the date upon which to determine when a claim arose we would disembowel the reasons for a bar claims date and throw into the sea all those legal struggles about whether a claimant may file a late proof of claim. *See, e.g., In re Keene Corp.,* 188 B.R. 903 (S.D.N.Y.1995).

The July 20, 1984 bar claims date is also the correct procedural choice. We originally held that the notice given to the seamen Claimants was inadequate. On remand we were directed to decide the reasonableness of the notice to particular individuals or groups. Lacking at trial and in the parties' briefs was any mention or discussion about the adequacy of notice to the Claimants. We must assume, therefore, that this issue has been waived by Waterman, and so rule.

### Who Has The Burden Of Proof In This Adversary Proceeding?

At trial, MALC argued that Waterman had the burden of proof, which Waterman disputed. MALC's position would be correct if this were an ordinary complaint for injunctive and declaratory relief. This is no ordinary case, however. It is difficult to describe because it doesn't fit into any particular legal cargo hold. It can be looked at either as an objection to discharge or as an objection to claims. If looked at as an objection to discharge, then it is the complaining entity that has the burden of proof. In this instance, even though Waterman is the plaintiff, it is MALC that wants to be excepted from the consequences of the confirmation order. Thus, viewed in this way, the burden of proof belongs on MALC's deck. If this action is looked at as an objection to claim, however, the burden of proof rests on different parties at different times, but the ultimate burden of persuasion is always on the claimant. Initially a claimant must allege facts sufficient to support a claim. In many instances, the mere filing of a proof of claim is sufficient to carry the day. The burden of going forward then shifts to the objector to

produce evidence negating the *prima facie* validity of the filed claim. If sufficient evidence is produced to refute one or more of the facts in the filed claim, the burden of going forward then reverts to the claimant, with the ultimate burden of persuasion always remaining on the claimant. *See* Fed. R.Bkrtcy.P. 4005. In this instance, MALC's clients are the claimants, thus the burden of proof is on MALC.

█ An even more persuasive basis for placing the burden of proof on MALC is the general rule that when the true facts relating to a dispute are particularly within the knowledge of one party, then the burden of proving an issue lies with the knowledgeable party. Waterman should not have to prove a negative. As has been demonstrated to this court by the ample [6] amount of evidence introduced at trial, MALC has absolute control over the information that would demonstrate when each of the Claimants manifested an asbestos-related disease.

### May We Add Unnamed Claimants To This Action?

█ At trial, and for the first time in this adversary proceeding, MALC argued that any judgement this court makes will bind only the 150 Claimants specifically named as defendants in Waterman's adversary complaint. Waterman countered with a motion to add all Claimants who have sued already or may sue in the future on the asbestos issue. MALC's argument should be deep-sixed for several reasons:

● This Court and these parties have struggled to reach a consensual resolution of the matters contained within the hull of this adversary proceeding for all 3,500 Claimants, even though only 150 Claimants were named as defendants. Our reasons for attempting a global settlement are obvious based upon the record. All the Claimants have similar claims to which Waterman has similar defenses. Were this a class action lawsuit, we could find that there is numerousness and commonality. *See* Fed.

R.Civ.P. 23(a)(1)–(3). Unfortunately, we were unable to weld a global settlement.

● At no time after remand did MALC ever attempt to limit discovery to the original 150 Claimants.

● MALC has consistently held itself out as representing all of the 3,500 potential Claimants who believe they have claims against Waterman. There is no doubt that the unnamed defendants have had adequate representation.

● Both Debtor and Claimants need finality. This litigation must end sometime within this millennium. Many of the Claimants are in their seventies and eighties. If they are entitled to a recovery, it seems just that they should receive it while they are alive. Our joinder of the additional defendants will provide Waterman and the Claimants complete rather than partial relief.

● Parties may be dropped or added by order of the Court on motion of any party or of its own initiative at any stage of the action and on such terms as are just. Fed. R.Civ.P. 21. The justice to be achieved here is timely adjudication, finality, and elimination of the possibility of inconsistent judgments. Moreover, and as set out below, all 3,500 Claimants, named and unnamed alike, with a few specific exceptions, will have an additional period of time to provide supplemental discovery to aid the decision-making process of this court.

● Our joinder of the additional defendants in no way affects the course of this litigation. *Compare Mullaney v. Anderson,* 342 U.S. 415, 417, 72 S.Ct. 428, 430, 96 L.Ed. 458 (1952) (Supreme Court affirmed order to add defendants after judgment).

● Fed.R.Civ.P. 15(b) commands mandatory, not permissive, joinder whenever issues are tried and presented even though they were not presented or raised in the pleadings. Cases should be decided on the actual dispute between the parties and not on the paper pleadings originally filed. *See, SEC v. Rapp,* 304 F.2d 786, 790 (2d Cir.1962).

---

**6.** We use the term "ample" only in the sense that the evidence was presented in several large boxes that required months of effort to review. We do not mean to imply here that MALC carried the day as it pertains to the burden of proof.

Accordingly, for the foregoing reasons, we hold that the asbestos-related claims of all 3,500 seamen are before us for decision.

### Are Claims for Post–Bar Date Wrongful Deaths Deemed to Be Pre–Bar Date Claims When the Underlying Injury Manifested Before the Bar Date?

■ At trial, MALC argued for the first time that because a wrongful death action accrues upon the date of death under the Jones Act, 46 U.S.C.App. § 688, the wrongful death claims of Claimant's survivors were post confirmation [7] claims. This argument reflects a basic misunderstanding of bankruptcy law regarding claims. The definition of a claim is broadly construed. The notion that a derivative claim in bankruptcy does not arise until it has accrued under state or other relevant law would interfere with the fresh start of every debtor because no debtor could ever be assured that all cognizable claims had been dealt with in the plan of reorganization. We hold that because a wrongful death claim in the instant adversary proceeding is a statutory derivative of an asbestosis claim, it accrued whenever the asbestosis claim accrued.

### Did The Northern District of Ohio Court Order Have *Res Judicata* or Collateral Estoppel Effect Here?

■ MALC introduced at trial its Exhibit "D," an Order and Memorandum Opinion of Federal Judge Lambros of the Northern District of Ohio, dated May 9, 1989. The Order dismisses without prejudice 687 maritime asbestos claims filed by MALC. Because the claims of 48 of the original defendants in this action were dismissed by Judge Lambros' Order, MALC argues that Order "may resolve the issue with respect to those 48 individuals in terms of whether or not they had manifested any disease prior to the bar date." *See* Transcript at 51. This is the most preposterous of all the arguments MALC has made in this adversary proceeding. The claims were dismissed, under Fed. R.Civ.P. 11, 41(b) and 56, because MALC had failed to come forward with medical rec-

ords to establish a medical basis for the claims,[8] despite Judge Lambros' repeated requests that such information be submitted. By arguing that Judge Lambros' dismissal establishes that the claims had not manifested as of the date of the dismissal order, MALC is attempting to use its own recalcitrance to prove a negative. We hold that Judge Lambros' Order has no effect, except, perhaps, to explain just why it is that this adversary proceeding cannot be resolved today.

### Did MALC Ignore Our Orders and Directions To Comply With Waterman's Discovery Requests?

In the discovery phase of this adversary proceeding, Waterman requested that MALC produce medical information concerning each Claimant that would demonstrate whether a Claimant had manifested symptoms of an asbestos-related disease prior to the confirmation date. MALC produced information concerning 3,274 out of the 3,555 Claimants. This information is contained on documents entitled *Initial Data Forms* (IDF). All 3,274 of the IDFs have been introduced at trial as Exhibit 7. In addition to the IDFs, MALC introduced x-ray letters from medical center doctors and interrogatory answers from some of the original defendants. The IDFs, x-ray letters and interrogatory answers are telling for what is not contained therein.

As part of our painstaking and lengthy review of the facts in this adversary proceeding, we went through each of the individual case files for the 3,274 Claimants, more or less, for which MALC submitted medical information. Unfortunately, in the vast majority of cases, the individual Claimant files do not contain enough information for us to make a decision today. The reasons for our inability to make a decision are numerous and many, but the most significant reason was the desire of all counsel to limit oral testimony at the trial. What resulted was a summary proceeding not unlike an objection-to-claim contested matter. A summary proceeding would have been sufficient if MALC

---

7. We ruled *infra* that the July 20, 1984, bar claims date would be the determining date.

8. The situation in this matter is not dissimilar to what happened in Ohio, before Judge Lambros.

had provided us with sufficient information upon which to make an adjudication. MALC did not provide us with that quantum of information. MALC did, however, provide us with enough information so that if this had been a hearing on Waterman's motion for summary judgment we would have had to deny summary judgment; enough contested issues of fact were shown to require a trial.

█ Based on our experience with this adversary proceeding and others, we think MALC wants to provide just enough information to survive an objection to claim so that it can bring these asbestos claims in another forum and to a jury one case at a time. Waterman thought it was having a trial; so did we. After a review of the evidence, we think MALC has to submit more evidence or the claims will be dismissed. In the alternative, the Claimants will be barred from obtaining relief from Waterman in any forum.

One fact is not in dispute. Waterman candidly admits that each of the Claimants were exposed to asbestos long before the confirmation or petition date. The issue to be tried is when the Claimants first manifested illness. MALC's evidence introduced at trial was not calculated to help us decide the issue. Instead, it was more like trying to find the peanut under one of three shells in a sidewalk huckster's game.

As we indicated earlier, evidence at trial consisted of IDFs, x-ray letters (not x-rays), interrogatories, and, for 37 Claimants, some additional medical information. For ease of understanding and purposes of this memorandum of decision we allow into evidence summaries prepared by Waterman labeled A through D.

Schedule A lists those Claimants who admit they manifested symptoms prior to the confirmation date.[9] Various sub-schedules of A (A–1 through A–5) vaguely support the claim of preconfirmation manifestation through indications that the disease mani-

fested itself "within three years of the complaint,"[10] and use of x-ray dates, medical data, pathology reports or miscellaneous documents.

The difficulties with the data are best understood for what they don't say. The IDFs contain a space to enter the precise date when the disease was first diagnosed. That space was blank for 3,284 Claimants, who failed to fill in the date of discovery. MALC argues that the interrogatory answers introduced into evidence without objection are enough to carry the day because each and every one states "each defendant first became aware of his or her injuries or health problems subsequent to the date of the medical provided." We have no idea what this totally self-serving statement means. MALC's response is inadequate. A person diagnosed with asbestosis should be able to give the date of that diagnosis. Just stating the year may be sufficient in some cases.

Of the X-ray letters provided for 2,500 Claimants, 2,385 do not even contain the date when the x-ray was taken. About 500 of these letters do not even rise to the level of a diagnosis. About all these letters tell us is the state of the disease when the x-ray was taken, but not when the disease manifested. Finally, and without going further into the paltry evidence received, 281 Claimants failed to produce any evidence whatsoever.

### Conclusion

Unfortunately, we cannot reach a conclusion today because to do so would be a violation of the due process rights of the Claimants. Our role as a jurist is to ensure to the best of our ability a just result in any controversy that comes before us. To ensure that result in this adversary proceeding we are going to reopen discovery to obtain the following:

1) Date of discovery of Disease

2) X-ray or x-rays with dates

will give MALC an opportunity to supplement the evidence.

---

9. We use the confirmation date because that is how Waterman presented the data. As we indicated, *supra,* the operative date is the bar claims date. Our purpose in describing the data here is to show how woeful a presentation of evidence about the manifestation date we received. We

10. This is apparently a reference to a complaint filed against Waterman or some other entity in another forum.

3) Medical records with dates prior to the bar date

4) Death certificates with the cause of death for those Claimants who have died.

Excluded from our discovery order are the Claimants specifically set out below. Sufficient medical records were received from these Claimants for us to come to a conclusion about whether or not they knew or should have known that they had a claim against Waterman prior to the bar date of July 20, 1984. Accordingly, we indicate whether each named Claimant may or may not sue Waterman. Where suit is permitted, our holding is limited only to a finding that the Claimant is not bound by the bar claims date. Any Claimant that sues still must prove they have an asbestos-related disease. In some instances, this may be very difficult, based on the medical records we have reviewed.

**Ballard, Herbert,** showed signs of chronic obstructive pulmonary disease from heavy smoking, and moderately differentiated adenocarcinoma of the lung on 10–02–91. I cannot conclude one way or another about the state of his knowledge about any asbestosis related diseases. He cannot sue Waterman until he provides a medical history from 1991 and back to at least 1980.

**Carstaphen, Frank,** died on 06–07–84. He died from pulmonary carcinoma. I find he knew he had an asbestos-related disease before the bar date. His estate may not sue Waterman.

**Chen, Ken,** underwent a fiber optic bronchoscopy one day prior to the bar date. The bronchoscopy was to rule out a pneumothorax. The records do not indicate a diagnosis of an asbestos-related disease, although it is clear from the medical records he had the tell-tale symptoms. It seems his doctors were attempting to rule out causes other than asbestos. I find that Mr. Chen did not know he had an asbestos-related disease prior to the bar date. Accordingly he may sue Waterman postpetition.

**Dansley, Tobe,** had no signs of lung disease on 04–20–94. He may sue Waterman.

**Delgado, Pedro,** had a negative x-ray in August, 1983. He clearly had other forms of carcinoma that may or may not have been related to asbestos. I find that he did not know he had an asbestos related disease and hold he is free to sue Waterman.

**Griffin, Jack David,** had no signs of asbestosis on 03–13–84. He may sue Waterman.

**Guaris, Juan,** had a negative X-ray and clear lungs as late as 06–13–84. I find he did not know he had an asbestos-related disease prior to the bar date, and that he is free to sue Waterman.

**Jordan, Anderson,** had roentgenological findings on 08–11–92 of lungs free from disease. He may sue Waterman.

**Kundrat, Joseph J.,** had clear lungs up until January of 1986. While he may have other serious medical problems, there is no evidence he had any signs of asbestos-related diseases. He may sue Waterman.

**Lewis, Jessie,** has proven to me he is hard of hearing, but has submitted no proof that he has an asbestos-related disease. He may not sue Waterman.

**Lott, Lamar, Sr.,** had pleural thickening as early as 09–25–67, along with other problems related to obesity. I find that he knew he had an asbestos-related disease prior to the bar date and accordingly bar him from suing Waterman.

**Markris, S.A.,** produced an x-ray that shows transradiancy in the lungs and linear strands in the mid-section of each lung. He also had chronic obstructive pulmonary disease and cardiac problems. He manifested an asbestos-related disease as early as 10–19–82. He cannot sue Waterman.

**Martin, Hubert,** had a physical on 03–26–82 and an X-ray that indicated his lung fields were clear and that there was no pleural effusion. A further examination in 1983 indicated no pulmonary problems. He may sue Waterman.

**Serio, Salbato,** on 01–3–69, produced an x-ray that shows diffuse thickening of

branch vascular markings (lung markings) that changed in 1971 to diffuse interstitial fibrosis. The x-rays changed to increased interstitial fibrosis and remained that way until the last physical examination report presented to us, which is dated 07–29–81. It is clear Mr. Serio had an asbestos-related disease prior to July 20, 1984. He is barred from suing Waterman.

**Villot, Jose F.**, while suffering from all the problems of being overweight, had clear lungs into the 1990's, so he may sue Waterman.

Our ability to rule in the above-mentioned claims is the clearest indicator of why we need to order additional discovery. If we had the same detail for the other 3,500 Claimants as we had for the above-mentioned Claimants, we would be able to make a decision that, sadly, we now cannot.

### Settle Order

Council for Waterman is to settle an order on MALC that incorporates the findings and holdings in this memorandum of decision.

A telephonic status conference is set for the 23 day of Oct., 1996 at 12:00 in the P.M. Counsel for Waterman is to initiate the call.