IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2023 Term

**FILED**

**March 27, 2023**

released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

No. 21-0843

A. KARIM KATRIB, M.D.,
Petitioner,

v.

HERBERT J. THOMAS MEMORIAL HOSPITAL ASSOCIATION
and THOMAS HEALTH SYSTEM, INC.,
Respondents.

Appeal from the Circuit Court of Kanawha County
The Honorable Joanna I. Tabit, Judge
Case No. 21-C-409

AFFIRMED

Submitted: January 10, 2023
Filed: March 27, 2023

John J. Polak, Esq.
Mark A. Atkinson, Esq.
ATKINSON & POLAK, PLLC
Charleston, West Virginia
Counsel for Petitioner

Thomas J. Hurney, Jr., Esq.
Mark H. Dellinger, Esq.
Laura A. Hoffman, Esq.
Jackson Kelly PLLC
Charleston, West Virginia
Counsel for Respondents

CHIEF JUSTICE WALKER delivered the Opinion of the Court.

JUSTICE ARMSTEAD deemed himself disqualified and did not participate in the decision.

JUDGE SHAWN DAVID NINES sitting by temporary assignment.

JUSTICE WOOTON dissents and may write separately.

SYLLABUS BY THE COURT

1.      "'Appellate review of a circuit court's order granting a motion to dismiss a complaint is *de nov*o.'  Syl. Pt. 2, *State ex. rel McGraw v. Scott Runyan Pontiac-Buick, Inc.*, 194 W.Va. 770, 461 S.E.2d 516 (1995)."  Syllabus Point 2, *Vanderpool v. Hunt*, 241 W. Va. 254, 823 S.E.2d 526 (2019).

2.      "'"The trial court, in appraising the sufficiency of a complaint on a Rule 12(b)(6) motion, should not dismiss the complaint unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).'  Syllabus Point 3, *Chapman v. Kane Transfer Co., Inc.*, 160 W. Va. 530, 236 S.E.2d 207 (1977)."  Syllabus Point 2, *Boone v. Activate Healthcare, LLC*, 245 W. Va. 476, 859 S.E.2d 419, 420 (2021).

3.      "'Whenever it is determined that a court has no jurisdiction to entertain the subject matter of a civil action, the forum court must take no further action in the case other than to dismiss it from the docket.'  Syllabus Point 1, *Hinkle v. Bauer Lumber & Home Bldg. Ctr., Inc.*, 158 W.Va. 492, 211 S.E.2d 705 (1975)."  Syllabus Point 1, *Hanson v. Bd. of Educ. of the Cnty. of Min.*, 198 W. Va. 6, 479 S.E.2d 305 (1996).

WALKER, Chief Justice:

In May 2021, Petitioner A. Karim Katrib, M.D., sued Herbert J. Thomas Memorial Hospital Association and Thomas Health System, Inc.[1] Because Dr. Katrib's claims related to the 2019 suspension of his hospital clinical privileges and medical staff membership, which occurred before Thomas Hospital's Chapter 11 bankruptcy confirmation order and reorganization plan,[2] the circuit court dismissed the complaint under Rules 12(b)(1) and 12(b)(6) of the West Virginia Rules of Civil Procedure. The circuit court held that it lacked jurisdiction because the claims were discharged in bankruptcy and so the complaint failed to state a claim upon which relief can be granted. We agree and affirm the order.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

Dr. A. Karim Katrib is a self-employed physician who practices in South Charleston, West Virginia. He held clinical privileges and medical staff membership with Thomas Hospital for approximately 34 years until they were suspended in 2019. In 2021, he filed this action raising claims related to the 2019 suspension. The question presented

---

[1] Herbert J. Thomas Memorial Hospital Association is a subsidiary of Thomas Health Systems, Inc. For the sake of brevity, we refer to these Respondents collectively as "Thomas Hospital."

[2] *See In re Thomas Health System, Inc., et al.*, Case No. 20-20007 (Bankr. S.D. W. Va. Aug. 19, 2020).

1

here is whether those claims were discharged in Thomas Hospital's 2020 bankruptcy proceeding, so we begin there.

On January 10, 2020, Thomas Hospital and its subsidiaries filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code.[3] Thomas Hospital did not list Dr. Katrib as a creditor in its petition, so it did not provide him with actual notice of the filing and claims bar date. But Thomas Hospital publicized notice of the bankruptcy proceedings in *The Wall Street Journal*, and local newspapers including *The Register-Herald*, *The Charleston Gazette-Mail*, and *The Herald-Dispatch* on July 14, 2020. There is no indication in the record that Dr. Katrib submitted proof of his claims to the bankruptcy court.

The bankruptcy proceedings ultimately led to a Chapter 11 reorganization plan that was approved and confirmed by the United States Bankruptcy Court for the Southern District of West Virginia on August 19, 2020, with an effective date of September 30, 2020. Through this plan, the bankruptcy court allocated Thomas Hospital's debts among its creditors and discharged and released it from liabilities occurring prior to the petition date, January 10, 2020.[4] This discharge constituted a permanent statutory

---

[3] 11 United States Code §§ 101-1532.

[4] Article VIII of the plan provides that it

(continued . . .)

injunction prohibiting the commencement and continuation of released and discharged claims against Thomas Hospital.[5]

Under federal law, any actions taken in violation of the bankruptcy discharge injunction, and judgments entered or enforced against Thomas Hospital after the entry of the injunction are void and without effect.[6] Even so, Dr. Katrib filed this action in the Circuit Court of Kanawha County against Thomas Hospital on May 14, 2021. In his

---

shall be in complete satisfaction, discharge, and release, effective as of the Effective Date, of Claims . . . and Causes of Action of any nature whatsoever . . . including demands, liabilities, and Causes of Action that arose before the Effective Date . . . and all debts . . . whether or not: (1) a Proof of Claim based upon such debt or right is filed or deemed filed . . . or (3) the Holder of such a Claim has accepted the Plan or voted to reject the Plan. The Confirmation Order shall be a judicial determination of the discharge of all Claims subject to the occurrence of the Effective Date, except as otherwise specifically provided in the Plan.

[5] The plan describes the injunctive effect of the order:

From and after the Effective Date . . . all persons and entities that have, hold, or may hold claims that have been released, discharged, or are subject to the exculpation restrictions below are permanently enjoined, from and after the Effective Date, from . . . commencing . . . any cause of action released or to be released pursuant to the Plan or the Confirmation Order.

[6] 11 U.S.C. § 524(a).

complaint, Dr. Katrib alleged facts summarized below and accepted as true for purposes of this appeal.[7]

In December 2018, Thomas Hospital informed Dr. Katrib that its Peer Review Committee had concerns about a standard-of-care issue arising from his treatment of a patient in September 2018. The committee asked Dr. Katrib to address his treatment of the patient in writing, and he did so in January 2019.

By letter May 16, 2019, Thomas Hospital informed Dr. Katrib of the immediate precautionary suspension of all his clinical privileges. It stated that the medical staff peer review investigation process would be completed within thirty days, as required under the hospital's medical staff bylaws. Dr. Katrib claimed that he did not receive a response within that time.

On August 14, 2019, Dr. Katrib's counsel provided Thomas Hospital with the opinion of Dr. Jeremy Tiu regarding Dr. Katrib's treatment of the patient in question. According to Dr. Tiu, the patient received excellent care. Counsel also stated that Dr.

---

[7] *See John W. Lodge Distrib. Co. v. Texaco, Inc.*, 161 W. Va. 603, 605, 245 S.E.2d 157, 158 (1978) ("For purposes of the motion to dismiss, the complaint is construed in the light most favorable to plaintiff, and its allegations are to be taken as true.").

Katrib was willing to meet with those reviewing the suspension to discuss the treatment of the patient.

On September 19, 2019, Thomas Hospital advised Dr. Katrib that his clinical privileges and medical staff membership were suspended with a recommendation that they be revoked. Under the hospital's bylaws, Dr. Katrib had thirty days to request a hearing to protest this decision, which he did on October 2, 2019. But there had not been a hearing scheduled when Dr. Katrib filed his complaint in circuit court in 2021.

Dr. Katrib asserted five causes of action against Thomas Hospital related to the suspension of his privileges: Count I, violation of medical staff bylaws;[8] Count II, retaliation in violation of the West Virginia Patient Safety Act or a substantial public policy of West Virginia;[9] Count III, discrimination based on age, national origin, and religion in violation of the West Virginia Human Rights Act or a substantial public policy of West

---

[8] This type of action is commonly referred to as a *Mahmoodian* claim. *See* Syl. Pt. 1, *Mahmoodian v. United Hosp. Center, Inc.*, 185 W. Va. 59, 404 S.E.2d 750 (1991) ("The decision of a private hospital to revoke, suspend, restrict or to refuse to renew the staff appointment or clinical privileges of a medical staff member is subject to limited judicial review to ensure that there was substantial compliance with the hospital's medical staff bylaws governing such a decision, as well as to ensure that the medical staff bylaws afford basic notice and fair hearing procedures, including an impartial tribunal.").

[9] Dr. Katrib asserted that Thomas Hospital's suspension of his medical staff membership and clinical privileges was in retaliation for him voicing patient safety concerns at various times prior to 2018.

Virginia; Count IV, tortious interference; and Count V, intentional infliction of emotional distress.

In June 2021, Thomas Hospital filed a "Notice of Bankruptcy and Discharge of Proceedings," asserting that Dr. Katrib's claims had been discharged in bankruptcy and that the claims were permanently enjoined based on the discharge injunction. It also filed a motion to dismiss the complaint under Rules 12(b)(1) and 12(b)(6) of the West Virginia Rules of Civil Procedure. The circuit court conducted a hearing on the motion on September 13, 2021.

On September 24, 2021, the circuit court granted Thomas Hospital's motion to dismiss, finding that sufficient facts were present in the complaint to resolve the bankruptcy discharge affirmative defense. The circuit court found that the claims were discharged and permanently enjoined because Thomas Hospital's alleged conduct at issue occurred in 2018 and 2019, prior to the filing of the bankruptcy petition. It determined that the bankruptcy plan had res judicata effect over the claims brought by Dr. Katrib, so any judgment would be void. The circuit court also found that it lacked subject matter jurisdiction because these claims were discharged in bankruptcy, so it concluded that the complaint failed to state a claim upon which relief could be granted under Rules 12(b)(1) and 12(b)(6) of the West Virginia Rules of Civil Procedure. And it found that the dispute over clinical privileges and medical staff membership did not make Dr. Katrib a known

creditor of Thomas Hospital, so constructive notice of the bankruptcy was sufficient to bind Dr. Katrib to the discharge injunction, barring his claims.

## II. STANDARD OF REVIEW

Dr. Katrib appeals the circuit court's order dismissing his claims under Rules 12(b)(1) and 12(b)(6) of the West Virginia Rules of Civil Procedure. Both subsections of Rule 12 are applicable here because a circuit court lacks subject matter jurisdiction over claims discharged by a bankruptcy court, and any judgment rendered in violation of the bankruptcy court's discharge and injunction would be void.[10] This Court has held that "[a]ppellate review of a circuit court's order granting a motion to dismiss a complaint is *de novo*."[11] We have also held that "'[t]he trial court, in appraising the sufficiency of a complaint on a Rule 12(b)(6) motion, should not dismiss the complaint unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would

---

[10] *See* note 17, below; *see also* Teresa M. Schreffler & The Honorable Janice Miller Karlin, *Walking the Balance Beam of the Bankruptcy Code's Discharge Injunction*, 87 J. Kan. B. Ass'n. 38, 40 (May 2018) ("A bankruptcy discharge voids any judgment at any time obtained, to the extent that such judgment is a determination of the personal liability of the debtor with respect to any debt discharged under the applicable chapter. The discharge injunction also operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived.") (citing 11 U.S.C. §§ 524(a)(1) and (a)(2)) (quotation marks and footnotes omitted).

[11] Syl. Pt. 2, *Vanderpool v. Hunt*, 241 W. Va. 254, 823 S.E.2d 526 (2019) (first quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); then quoting Syl. Pt. 2, *State ex. rel McGraw v. Scott Runyan Pontiac-Buick, Inc.*, 194 W. Va. 770, 461 S.E.2d 516 (1995)).

entitle him to relief.'"[12]  At the same time, a motion to dismiss "enables a circuit court to weed out unfounded suits."[13]

### III.  ANALYSIS

We begin our analysis and application of federal law with two fundamental concepts.  First, "a principal purpose of the Bankruptcy Code is to provide debtors and creditors with 'the prompt and effectual administration and settlement of the [debtor's] estate.'"[14]  Along with that comes the similar purpose "to centralize disputes over the debtor's assets and obligations in one forum, thus protecting both debtors and creditors from piecemeal litigation and conflicting judgments."[15]  These background rules provide context for why Thomas Hospital's reorganization plan set strict cut-off dates for potential creditors like Dr. Katrib.  Without the finality of those deadlines, the bankruptcy process is robbed of the certainty federal law affords a debtor to restructure and pull itself back to

---

[12] Syl. Pt. 2, *Boone v. Activate Healthcare, LLC*, 245 W. Va. 476, 859 S.E.2d 419, 420 (2021) (quoting Syl. Pt. 3, *Chapman v. Kane Transfer Co., Inc.*, 160 W. Va. 530, 236 S.E.2d 207 (1977)).

[13] *McGraw*, 194 W. Va. at 776, 461 S.E.2d at 522.

[14] *Moses v. CashCall, Inc.*, 781 F.3d 63, 72 (4th Cir. 2015) (quoting *Katchen v. Landy*, 382 U.S. 323, 328 (1966)).

[15] *Moses*, 781 F.3d at 72 (citing *Phillips v. Congelton, L.L.C. (In re White Mountain Mining Co.)*, 403 F.3d 164, 169-70 (4th Cir. 2005)).

solvency. The clear purpose of a bankruptcy discharge and the concomitant injunction provision is to give the debtor a financial "'fresh start.'"[16]

While discharge in bankruptcy is an affirmative defense under Rule 8(c) of the West Virginia Rules of Civil Procedure, this defense strikes at the heart of a circuit court's subject matter jurisdiction. When Thomas Hospital filed for bankruptcy, the United States District Court for the Southern District of West Virginia had exclusive jurisdiction over prepetition claims against it.[17] "The authorities seem to be uniform to the effect that where a discharge in bankruptcy is pleaded as a defense . . . the burden is upon the defendant to prove his discharge," and this "may be done by putting in evidence a certified copy of the order granting the discharge."[18] And it is "clearly proper" in deciding a motion

---

[16] *In re Jet Florida Systems, Inc.*, 883 F.2d 970, 972 (11th Cir. 1989) (quoting Thomas H. Jackson, *The Fresh-Start Policy in Bankruptcy Law*, 98 Harv. L. Rev. 1393, 1396-97 (May 1985)).

[17] This case raises issues of federal preemption because Congress has given the United States District Courts original and exclusive jurisdiction over prepetition claims in bankruptcy matters. The Bankruptcy Code provides that "[t]he district court in which a case under title 11 is commenced or is pending shall have exclusive jurisdiction of all the property, wherever located, of the debtor as of the commencement of such case, and of property of the estate." 28 U.S.C. § 1334(e)(1). The bankruptcy court that confirms a reorganization plan enters an injunctive order—the confirmation order, *see* 11 U.S.C. §§ 524, 1141—the violation of which it can sanction. *See Cox v. Zale Delaware, Inc.*, 239 F.3d 910, 915 (7th Cir. 2001) ("the creditor who attempts to collect a discharged debt is violating not only a statute but also an injunction and is therefore in contempt of the bankruptcy court that issued the order of discharge.") (citing *Pertuso v. Ford Motor Credit Co.*, 233 F.3d 417, 421 (6th Cir. 2000)).

[18] 2 A.L.R. 1672.

9

to dismiss under Rules 12(b)(1) and (6) "to take judicial notice of matters of public record."[19]

In this appeal, we are asked to determine whether the circuit court erred by concluding that Dr. Katrib's claims were subject to the discharge, release, and injunction provisions of Thomas Hospital's Chapter 11 bankruptcy confirmation order and reorganization plan. In most cases, confirmation of the plan results in discharge of all prepetition claims against the debtor.[20] Even so, a bankruptcy discharge may be challenged on due process grounds and "[a]ny claimant who makes such a challenge bears the burden of proof."[21]

Dr. Katrib relies on this important but "seldom-occurring" [22] exception in bankruptcy law: a party who fails to receive adequate notice of a bankruptcy filing is not

---

[19] *Norris v. Hearst Trust*, 500 F.3d 454, 461 n.9 (5th Cir. 2007) (citing *Cinel v. Connick*, 15 F.3d 1338, 1343 n.6 (5th Cir. 1994)); *see also* Syl. Pt. 1, *Forshey v. Jackson*, 222 W. Va. 743, 671 S.E.2d 748 (2008) ("A circuit court ruling on a motion to dismiss under Rule 12(b)(6) of the West Virginia Rules of Civil Procedure may properly consider exhibits attached to the complaint without converting the motion to a Rule 56 motion for summary judgment.").

[20] 11 U.S.C. §§ 1141(c), (d)(1)(A).

[21] *In re Tronox Inc.*, 626 B.R. 688, 718 (Bankr. S.D.N.Y. 2021) (citing *Waterman S.S. Corp.*, 200 B.R. 770, 744-75 (Bankr. S.D.N.Y. 1996)).

[22] *In re Newstar Energy of Texas, LLC*, 280 B.R. 623, 626 (Bankr. W.D. Mich. 2002).

bound by the terms of its confirmation order. He claims that he was a known creditor of Thomas Hospital who was entitled to actual written notice of the bankruptcy filing and that summary dismissal of his claims resulted in a denial of due process. Dr. Katrib contends that whether he was an unknown creditor—and so not entitled to actual notice—was an issue of fact that Thomas Hospital had the burden of proving and that he was entitled to discovery to explore. He also argues that because the complaint sufficiently challenges Thomas Hospital's continued failure to provide him with a hearing in compliance with hospital bylaws, this claim was not discharged in bankruptcy.

Thomas Hospital responds that because all of Dr. Katrib's claims arise from conduct that occurred in 2018 and 2019, these prepetition claims were discharged in the 2020 bankruptcy. It argues that dismissal was proper here because the facts of the bankruptcy discharge were not disputed and its application to Dr. Katrib's claims was apparent from the face of the complaint.[23] And as in any other matter where jurisdiction is challenged, Thomas Hospital states that Dr. Katrib had the opportunity to submit additional evidence to refute the arguments that he was an unknown creditor, but he did

---

[23] Thomas Hospital notes that Dr. Katrib had ample opportunity to file a proof of claim with the Bankruptcy Court, request a modification of the plan to exclude his claims from the discharge injunction, or object to the confirmation of the plan.

not come forward with any evidence to suggest that the bankruptcy discharge did not apply to his claims.[24] We take up these two issues in turn.

## A. Adequate Notice of Bankruptcy Filing

Dr. Katrib's main contention is that he was a known creditor who was entitled to actual written notice of Thomas Hospital's bankruptcy filing. And Dr. Katrib argues that without adequate notice, the circuit court's dismissal of his claims resulted in a denial of due process in violation of the Fifth Amendment to the United States Constitution and Article III, section 10 of the West Virginia Constitution. Thomas Hospital responds that because Dr. Katrib was an unknown creditor, publication notice of the bankruptcy was sufficient to satisfy due process requirements.[25]

Procedural due process is a fundamental component of Chapter 11 bankruptcy because of the broad relief that may be granted to those that seek its protection. The "reorganization process is dependent on the proper notification to creditors and other interested parties of all important steps in the proceeding so that they may take such steps as necessary to safeguard their interests."[26] Due process requires notice that is

---

[24] *See Elmore v. Triad Hosps., Inc.*, 220 W. Va. 154, 158 n.7, 640 S.E.2d 217, 221 n.7 (2006) (recognizing that matters outside the pleadings can be considered in deciding a motion to dismiss for lack of jurisdiction under Rule 12(b)(1)).

[25] Because these issues are intertwined, we address them jointly.

[26] *In re Harbor Tank Storage Co.*, 385 F.2d 111, 115 (3d. Cir. 1967).

"'reasonably calculated to reach all interested parties, reasonably conveys all required information, and permits a reasonable time for a response.'"[27] As a result, "[i]nadequate notice is a defect which precludes discharge of a claim in bankruptcy."[28]

Whether notice satisfies these requirements under federal law depends on whether the creditor is known or unknown.[29] A debtor must provide a known creditor with actual written notice of the bar date.[30] A known creditor is "one whose identity is either known or 'reasonably ascertainable by the debtor.'"[31]

> A creditor's identity is "reasonably ascertainable" if that creditor can be identified through reasonably diligent efforts. . . . Reasonable diligence does not require impracticable and extended searches . . . in the name of due process. . . . A debtor does not have a duty to search out each conceivable or possible creditor and urge that person or entity to make a claim against it. . . . The requisite search instead focuses on the debtor's own

---

[27] *Chemetron Corp. v. Jones*, 72 F.3d 341, 346 (3d Cir. 1995) (quoting *Greyhound Lines, Inc. v. Rogers (In re Eagle Bus Mfg., Inc.)*, 62 F.3d 730, 735 (5th Cir. 1995)).

[28] *Chemetron*, 72 F.3d at 346.

[29] *Id.*

[30] *In re Energy Future Holdings Corp.*, 522 Bank. 520, 529 (Bankr. D. Del. 2015).

[31] *In re Nortel Networks, Inc.*, 531 B.R. 53, 63 (Bankr. D. Del. 2015) (quoting *Chemetron*, 72 F.3d at 346); *see In re J.A. Jones, Inc.*, 492 F.3d 242, 251 (4th Cir. 2007) (affirming bankruptcy court and district court's determination that a woman's estate—following a fatal car crash—was a known creditor based on "[a] plethora of facts and circumstances" that indicated the accident was reported to the contractor's insurer as "an occurrence or offense" which may result in a claim for damages) (internal quotation marks omitted).

book and records. Efforts beyond a careful examination of these documents are generally not required[.][32]

An unknown creditor, on the other hand, is "one whose 'interests are either conjectural or future or, although they could be discovered upon investigation, do not in due course of business come to [the debtor's] knowledge.'"[33] And "it is not the debtor's duty to search out each conceivable or possible creditor and urge that person or entity to make a claim against it."[34] In other words, "[d]ebtors cannot be required to provide actual notice to anyone who potentially could have been affected by their actions [because] such a requirement would completely vitiate the important goal of prompt and effectual administration and settlement of debtors' estates."[35] For unknown creditors, "constructive notice of the claims bar date by publication satisfies the requirements of due process."[36]

---

[32] *Nortel Networks*, 531 B.R. at 63 (quoting *Chemetron*, 72 F.3d at 346-47 (internal quotation marks and citations omitted)).

[33] *Chemetron*, 72 F.3d at 346 (quoting *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 317 (1950) (footnote omitted)).

[34] *In re Brooks Fashion Stores, Inc.*, 124 B.R. 436, 445 (Bankr. S.D.N.Y. 1991) (internal quotation marks and citations omitted).

[35] *In re U.S.H. Corp. of New York*, 223 B.R. 654, 659 (Bankr. S.D.N.Y. 1998) (citing *Chemetron*, 72 F.3d at 348).

[36] *Chemetron*, 72 F.3d at 348 (citing *City of New York v. New York, N.H. & H.R. Co.*, 344 U.S. 293, 296 (1953)).

In this case, the parties agree that there was a dispute over the 2019 suspension of Dr. Katrib's hospital privileges resulting from a standard-of-care issue with a patient he treated. Dr. Katrib retained an expert to render an opinion on the matter and asked for a hearing to challenge the suspension, but one was not scheduled. So this appeal turns on whether Thomas Hospital's knowledge of this dispute makes Dr. Katrib's violation-of-medical-staff-bylaws claim "reasonably ascertainable" from a search of its records.[37] Dr. Katrib argues that because he suffered an actual, recognized, property injury when his privileges were suspended that Thomas Hospital had "'some specific information that reasonably suggest[ed]'" this claim.[38] But he is conflating the issue of when this claim arose—a broad inquiry discussed below—with the inquiry of whether Thomas Hospital could reasonably ascertain him as a potential creditor.

Under the facts alleged here and applying federal law, Dr. Katrib's claim for violation of hospital bylaws would not be reasonably ascertainable by a review of Thomas Hospital's books and records. Other than requesting a hearing in October 2019, there is nothing to suggest that Dr. Katrib claimed damages from Thomas Hospital relating to the suspension of his privileges before the bankruptcy petition was filed or that he indicated that he would seek civil damages if Thomas Hospital did not provide him with a hearing.

---

[37] *See Chemetron*, 72 F.3d at 347 (applying "reasonably ascertainable" standard, not a "reasonably foreseeable" standard).

[38] *In re Arch Wireless, Inc.*, 534 F.3d 76, 81 (1st Cir. 2008) (quoting *In re Crystal Oil Co.*, 158 F.3d 291, 297 (5th Cir. 1998)).

15

Even though Dr. Katrib's protest to Thomas Hospital's alleged violation of its bylaws could arguably be discovered upon investigation, there is nothing to indicate that a search of Thomas Hospital's books and records would show that this protest would evolve into a claim for damages.[39] And knowledge of this dispute concerning clinical privileges cannot equate to knowledge that Dr. Katrib would bring various claims against Thomas Hospital for torts and statutory violations; these claims were entirely speculative and would not be identified through reasonably diligent efforts. For these reasons, the circuit court did not err in concluding that Dr. Katrib was an unknown creditor. So, notice by publication was constitutionally sufficient.[40]

---

[39] Dr. Katrib argues that this case is analogous to *In re Talon Auto Group, Inc.*, 284 B.R. 622 (Bankr. E.D. Mich. 2002), but *Talon* is distinguishable. In *Talon*, Ms. Vargo filed a grievance with her union steward after she was suspended pending discharge in November 2000 following an altercation with another employee. *Id.* at 623. A meeting was held between Ms. Vargo and representatives of Talon in December 2000 where it was agreed that she could return to work in a different capacity, pending the outcome of her grievance. *Id.* at 624. Talon later filed for Chapter 11 relief but did not list Ms. Vargo as a creditor nor provide her actual notice of the bankruptcy filing. *Id.* The bankruptcy court concluded that Talon was a known creditor because her grievance was still pending when Talon filed its bankruptcy petition. *Id.* at 626. It held that because Ms. Vargo did not receive proper notice of the bankruptcy, she was not bound by the confirmed Chapter 11 plan. *Id.* *Talon* is materially different than the facts alleged here because a pending grievance seeking reinstatement and backpay damages would be reasonably ascertainable by a search of the company's records. In this case, Dr. Katrib did not file a grievance or give any notice that he was seeking damages from Thomas Hospital related to his suspension.

[40] We are not persuaded by Dr. Katrib's argument that the issue of whether he qualified as an unknown creditor was an issue of fact upon which he was entitled to discovery. In his response to Thomas Hospital's motion to dismiss, Dr. Katrib did not come forward with any evidence, like an affidavit, to refute Thomas Hospital's evidence (continued . . .)

16

## B. *All Claims Were Discharged in Bankruptcy*

Dr. Katrib also argues that the circuit court erred in finding that his complaint did not seek relief for actionable nondischargeable conduct that Thomas Hospital committed or continued after the bankruptcy discharge. Specifically, he claims that the complaint challenges Thomas Hospital's continued failure to comply with the bylaws even after the effective date of the discharge order. Reasoning that the suspension of his clinical privileges and medical staff membership had been continuous from May 2019, Dr. Katrib maintains that the denial of due process alleged was also continuous. Thomas Hospital responds that Dr. Katrib should have brought his claims in the bankruptcy proceeding because they all stem from conduct that occurred in 2018 and 2019. It notes that courts have cautioned that "[c]laimants should not have an incentive to delay asserting their claims until after the debtor is reorganized, in the hopes of obtaining a complete recovery rather than the partial recovery they would likely get as part of the reorganization plan."[41]

---

of the bankruptcy discharge and its application to his claims. Likewise, in his alternative request for discovery, Dr. Katrib did not identify what kind of evidence would be helpful in resolving the issue. And while discovery is available to ascertain jurisdictional facts relative to a motion to dismiss, it was within the circuit court's sound discretion to deny his request for discovery. *Bowers v. Wurzburg*, 202 W. Va. 43, 48, 501 S.E.2d 479, 484 (1998).

[41] *DPWN Holdings (USA), Inc. v. United Air Lines, Inc.*, 871 F.Supp.2d 143, 157 (E.D.N.Y. 2012).

Federal law is clear that when a bankruptcy plan is confirmed, all prior claims against the reorganized company are discharged.[42] This is true regardless of whether a claim was listed on the company's schedules or a proof of claim was filed.[43] As the Bankruptcy Code provides, "the confirmation of a plan . . . discharges the debtor from any debt that *arose* before the date of such confirmation" and that "after confirmation of a plan, the property dealt with by the plan is free and clear of all claims and interests of creditors."[44] When determining when a claim arises for bankruptcy purposes, "reference is to be made to federal bankruptcy law rather than to state law."[45] And in this context, federal courts have recognized the broad definition given to the word "claim" in bankruptcy: "Congress intended that the definition of claim . . . be as broad as possible, noting that 'the bill contemplates that all legal obligations of the debtor, no matter how remote or contingent, will be able to be dealt with in the bankruptcy[,]'" and this "permits the broadest possible relief in the bankruptcy court."[46]

---

[42] 11 U.S.C. §§ 1141(c), (d)(1)(A).

[43] Although a failure to file a timely claim with the bankruptcy court may be excused where a plaintiff establishes "excusable neglect," Dr. Katrib has not made any allegations in that regard. *See* Fed. R. Bankr. P. § 9006(b)(1).

[44] 11 U.S.C. §§ 1141(c), (d)(1)(A) (emphasis added).

[45] *Butler v. NationsBank, N.A.*, 58 F.3d 1022, 1029 (4th Cir. 1995).

[46] *Grady v. A.H. Robins Co.*, 839 F.2d 198, 200 (4th Cir. 1988) (quoting H.R. Rep. No. 95-595, at 309 (1977) *as reprinted in* 1978 U.S.C.C.A.N. 5963, 6266; S. Rep. No. 95-989, at 22 (1978) *as reprinted in* 1978 U.S.C.C.A.N. 5787, 5808).

In its motion to dismiss, Thomas Hospital attached a copy of the bankruptcy order, and the circuit court was tasked with determining whether Thomas Hospital met its burden of showing that Dr. Katrib's complaint contained prepetition claims that fell within the discharge. As the Kentucky Supreme Court has observed and we concur, "[w]hile it is true that state courts lack jurisdiction to modify or to grant relief from a bankruptcy court's discharge injunction, they retain, . . . concurrent jurisdiction under 28 U.S.C. § 1334(b) 'to construe the discharge and determine whether a particular debt is or is not within the discharge.'" [47] Accepting the allegations in the complaint as true, the circuit court concluded that Dr. Katrib's claims arose prior to the confirmation date and were discharged by the bankruptcy court. We agree.

As explained above, Dr. Katrib's claims arise from his suspension of hospital privileges that occurred in 2019. In his reply brief, Dr. Katrib recognizes that the violation-of-bylaws claim "already existed" when Thomas Hospital filed for bankruptcy protection because he "suffered an actual injury in 2019 when his privileges were suspended." So, when the bankruptcy court discharged the claim under 11 U.S.C. § 1141(d) by confirmation

---

[47] *Sunbeam Corp. v. Dortch*, 313 S.W.3d 114, 115-16 (Ky. 2010) (quoting *In re Pavelich*, 229 B.R. 777, 783 (Bankr. App. 9th Cir. 1999)); *see also*, *In re Stabler*, 418 B.R. 764, 770 (Bankr. App. 8th Cir. 2009) (with a few exceptions, "state courts have concurrent jurisdiction to determine the dischargeability of a debt," as well as "whether [certain debts] constituted post-petition debts outside the penumbra of the discharge and discharge injunction."); *In re Hamilton*, 540 F.3d 367, 373 (6th Cir. 2008) ("State courts have unbridled authority to determine the dischargeability of debts" but an incorrect interpretation that effectively modifies the discharge order is ineffective.).

19

of the plan, 11 U.S.C. § 524(a)(2) automatically provided that the discharge operated as an injunction which barred the commencement of a state court action to collect the discharged claim.[48]  Contrary to his assertion, Dr. Katrib does not allege any post-confirmation acts by Thomas Hospital that give rise to his claim for violation of hospital bylaws, separate and distinct from its failure to hold a hearing in 2019.[49]

This Court has held that "[w]henever it is determined that a court has no jurisdiction to entertain the subject matter of a civil action, the forum court must take no further action in the case other than to dismiss it from the docket."[50]  For this reason, the circuit court properly dismissed the complaint.

## IV.  CONCLUSION

For the reasons set out above, we affirm the September 24, 2021, order of the Circuit Court of Kanawha County.

Affirmed.

---

[48] *Roy v. Garden Ridge, L.P.*, 640 S.E.2d 665, 666 (Ga. App. 2006) (quoting 4-524 Collier on Bankruptcy § 524.01 (15th ed. 2006)).

[49] At oral argument in this matter, Dr. Katrib's counsel conceded that his request for hearing is moot at this point.

[50] Syl. Pt. 1, *Hanson v. Bd. of Educ. of the Cnty. of Min.*, 198 W. Va. 6, 479 S.E.2d 305 (1996) (quoting Syl. Pt. 1, *Hinkle v. Bauer Lumber & Home Bldg. Ctr., Inc.*, 158 W. Va. 492, 211 S.E.2d 705 (1975)).

20